Anthony RAMBAUM, Respondent,

v.

Susan Lynn SWISHER, Respondent,

Hrvatski Dom, an Association,
petitioner, Appellant.

No. CO–87–2192.

Supreme Court of Minnesota.

Jan. 13, 1989.

Rolf E. Sonnesyn, Minneapolis, for appellant.

Edward Lynch, South St. Paul, for Anthony Rambaum.

Bradley Cosgriff, Hopkins, for Susan Swisher.

## OPINION

SIMONETT, Justice.

This case raises two issues: (1) Whether a fraternal club's sale of liquor to a person not a member or a guest is an illegal sale under the Civil Damages Act; and (2) whether the sum paid by a settling *Pierringer* defendant applies pro tanto to reduce all of plaintiff's award, not just the share attributable to the settling defendant's fault. The court of appeals ruled there was an "illegal sale" and the settlement payment did not apply "pro tanto." We affirm. We decline to reach a third issue not preserved for review.

Early in the evening of September 14, 1985, Susan Swisher had three or four mixed drinks at the Croatian Hall, a bar known locally as the Cro–Bar and operated by a fraternal organization known as Hrvatski Dom. Swisher then proceeded to O'Neill's Bar for the rest of the evening, where she had seven or eight drinks and left about midnight. On the way home, Swisher drove her car over the curb and struck plaintiff Anthony Rambaum.

Plaintiff Rambaum sued defendant Susan Swisher for negligent driving and sued defendants Hrvatski Dom (hereinafter the Croatian Club or Club) and O'Neill's Bar under the Civil Damages Act. Plaintiff claimed the Croatian Club's sales were illegal because in violation of its club license restricting sales to members and guests; plaintiff claimed O'Neill's sales were illegal because made to an obviously intoxicated person.

On the first day of trial, defendant O'Neill's Bar settled with plaintiff on a *Pierringer* release for $200,000. The case proceeded to trial, with the Croatian Club arguing that Swisher was a guest of a companion, who was allegedly a club member. The jury rejected the claim that the companion was a club member, found that the club had illegally sold liquor to Swisher, and found dramshop liability. Swisher and O'Neill's Bar were also found liable and fault was apportioned 80 percent to defendant Swisher, 10 percent to defendant Croatian Club, and 10 percent to O'Neill's Bar. Damages of $432,035.52 were awarded. When collateral sources were deducted and future damages discounted, the net award, exclusive of costs and prejudgment interest, was $268,241.67.

Since O'Neill's 10–percent share of the net award was only $26,824.17, its settlement payment of $200,000 proved to be more than generous. In post-trial motions, the Croatian Club asked that the entire $200,000 be credited against the net award. The trial court granted the motion.

On appeal to the court of appeals, defendant Croatian Club argued that a club sale to one not a member or guest was not an illegal dramshop sale. By notice of review, plaintiff Rambaum challenged the $200,000 award reduction and further attacked the constitutionality of Minn.Stat. § 604.07, subd. 2 (1986) (requiring future damages to be reduced to present value). The court of appeals affirmed the ruling of an "illegal sale" and rejected the constitutional challenge; but, except for a 10 percent reduction, the court denied the Croatian Club a credit for the $200,000 settlement payment. *Rambaum v. Swisher*, 423 N.W.2d 68 (Minn.App.1988). We granted the Croatian Club's petition for further review on the "illegal sale" and *Pierringer* payment issues. Plaintiff Raumbaum did not petition for further review on any issue but now seeks in his respondent's brief to raise a new issue, namely, that the future damages award should not be discounted because the discount statute was repealed

while appellate review of his case was pending.

## I.

■ The Civil Damages Act imposes dramshop liability for "illegally selling" alcoholic beverages but does not define what is illegal. Minn.Stat. § 340A.801, subd. 1 (1986). Does a liquor sale by a club licensed vendor to a person not a member or guest of the club constitute an "illegal sale" under the Act? We answer yes.

■ Under a club license, "liquor sales will only be to members and bona fide guests," Minn.Stat. § 340A.404, subd. 1 (1986); a violation of this limitation is a misdemeanor, Minn.Stat. § 340A.703 (1986). Whether a particular liquor sale imposes dramshop liability involves a four-step analysis. (1) Was the sale in violation of a provision of Chapter 340A? (2) If so, was the violation *substantially related* to the purposes sought to be achieved by the Civil Damages Act, *i.e.*, was the violation substantially related to the mischief sought to be suppressed and the remedy sought to be advanced by the Act? *Hollerich v. City of Good Thunder*, 340 N.W.2d 665, 669 (Minn.1983); *Kvanli v. Village of Watson*, 272 Minn. 481, 484, 139 N.W.2d 275, 277 (1965). If yes, then the violation is an "illegal sale" under the Act. This second step presents a policy question and raises an issue of law for the court to decide. If there is an illegal sale, the third and fourth steps present two causation questions: (3) Was the illegal sale a cause of the intoxication? and (4) if so, was the intoxication a cause of plaintiff's injuries? We are concerned here only with the second step in this analysis.[1]

The Croatian Club points out it served three mixed drinks during regular serving hours to an adult customer who was then sober. True, the customer was not a member or guest, but, argues the Croatian Club, there is simply no meaningful connection between benign sales to someone who only happens to be a nonmember and the problems the Civil Damages Act has in mind. Plaintiff, on the other hand, says "unlicensed sales" create dramshop liability. Both parties tend to argue whether the unlicensed sales "caused" the intoxication contributing to plaintiff's injuries, but this is not the test. We are not at this second stage of our dramshop analysis concerned with "causation" in a tort sense; rather, at this point we inquire whether, from a policy standpoint, there is a substantial relationship between the unlicensed sale and the purposes of dramshop liability.

The court of appeals suggested club members among themselves are more likely to drink moderately, and that the licensing restriction reflects a legislative belief that sales to nonmembers would "presumably dilute" this club tendency towards moderation. *Rambaum*, 423 N.W.2d at 72. The Croatian Club, on the other hand, asks us to take judicial notice that "[m]oderation has never been the touchstone of a club atmosphere"; in other words, the Club suggests, there is little to choose between the drinking habits of those who belong to clubs and those who do not. We do not think this kind of speculation leads us anywhere, except perhaps to reveal the difficulty in applying the "substantial relationship" test.

If we were writing on a clean slate, the argument that dramshop liability should be limited to sales to obviously intoxicated persons would not be unattractive as a matter of logic. In 1917, however, this court held that an illegal sale of liquor on Sunday was covered by the Dramshop Act. *Fest v. Olson*, 138 Minn. 31, 163 N.W. 798

---

**1.** The trial court handled the dramshop analysis properly. It ruled that a club sale to a non-member-nonguest would be an illegal dramshop sale and so instructed the jury. It then submitted the following special verdict questions (all of which the jury answered yes):

Question 5: Did Hrvatski Dom, dba Croatian Hall, illegally sell an alcoholic beverage to Susan Swisher?

Question 6: [If yes]. Did the illegal sale cause or contribute to the intoxication of Susan Lynn Swisher?

Question 7: [If yes]. Was the intoxication resulting from the illegal sale a direct cause of the injuries to the plaintiff?

(1917). In 1965, we added sales to minors, *Kvanli v. Village of Watson,* 272 Minn. 481, 139 N.W.2d 275 (1965), and 5 years ago we added after-hours sales, *Hollerich v. City of Good Thunder,* 340 N.W.2d 665 (Minn.1983). We have looked to the manner in which certain kinds of illegal sales impact on the public's access to and consumption of alcoholic beverages. The legislature has not seen fit to disagree with our interpretations of the Civil Damages Act over the years. In this case, with this background, we think it significant that the legislature has placed limits on the number of regular liquor licenses that a municipality may issue based on population. *See* Minn.Stat. § 340A.413 (1986). Club licenses, however, are excepted from this license quota, even though clubs, unlike some other special licensees, do substantial business. The club exception is granted, however, with the proviso that sales must be limited to club members and guests. This proviso serves, we think, to limit the extent clubs can compete for business with other licensed vendors, thereby reducing the potential for alcohol abuse that occurs with competition for consumers in an over-saturated market. In view of the legislature's strict regulation of vendors and its deep concern over alcohol abuse, we conclude that the relationship between the restrictive club license and the purposes of the Civil Damages Act is sufficiently substantial to make a club sale to a nonmember or nonguest an "illegal sale" for dramshop purposes. We do not by this opinion purport to characterize what further violations of Chapter 340A, if any, might be covered under the Civil Damages Act. Our decision is limited to club licenses under section 340A.404, subd. 1(3).

## II.

Is the entire $200,000 paid by O'Neill's Bar for its *Pierringer* release to be credited against plaintiff's judgment against defendants Croatian Club and Swisher? We agree with the court of appeals that it should not be.

■ The settling tortfeasor under a *Pierringer* release settles for its fair share of plaintiff's award as later determined by the trier of fact. Because plaintiff agrees, as part of the *Pierringer,* to indemnify the settling tortfeasor against cross-claims for contribution from nonsettling tortfeasors, the nonsettling tortfeasors are assured, as against the settling tortfeasor, that they will not pay more than their fair share of the yet-to-be-determined plaintiff's award. Thus, ordinarily, as here in this case, the settling tortfeasor is dismissed with prejudice from the lawsuit and all cross-claims for contribution between the settlor and the remaining defendants are likewise dismissed. *See, generally, Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978). Whatever sum plaintiff receives from the settling tortfeasor is in settlement of that tortfeasor's fair share of plaintiff's yet-to-be-determined award, and "[i]t should be of no concern of the nonsettling defendant how much the plaintiff received from the settling defendant." *Shantz v. Richview, Inc.,* 311 N.W.2d 155, 156 (Minn.1980).

■ Defendant Croatian Club argues, however, that if the settlement payment exceeds the settling defendant's fair share, the excess pocketed by the plaintiff should also be credited against plaintiff's award. The Croatian Club relies on subdivision 5 of our Comparative Fault Statute, Minn.Stat. § 604.01 (1986), which reads, in part:

> All settlements and payments made under subdivisions 2 and 3 shall be credited against any final settlement or judgment; * * *. * * * [T]he court * * * shall reduce the amount of the damages so determined by the amount of the payments previously made to or on behalf of the person entitled to such damages.

The statute seems to require that "all payments" under any settlement, including a *Pierringer* settlement, must go to reduce plaintiff's damages. In addition, argues the Club, not to credit the full payment gives plaintiff a windfall and violates the equitable principle that an injured party should not be overcompensated. To apply the *Pierringer* payment pro tanto—in full, against the entire award—would, however, be contrary to the intent of the settling parties who agreed to deduct from the ver-

dict award only that portion of the settlement payment attributable to the fault of the settling defendant. If a pro tanto reduction were required, the usefulness of the *Pierringer* release would be seriously impaired. Subdivision 5 of the statute was enacted in 1969, before the *Pierringer* was recognized, and it appears the legislature did not then have this kind of settlement in mind.

In this case, the settling parties misgauged what the jury's verdict would be and O'Neill's Bar paid "too much" for its release. This observation, however, is as idle as most hindsight pronouncements. Judged as of the time the settlement was made, weighing the risks as then understood, the settlement amount was "just right." In accepting the settlement payment, the plaintiff accepted the likelihood of being under-compensated as well as being over-compensated. If the jury had determined the amount of the O'Neill's Bar fair share at more than O'Neill paid for its release, the Croatian Club, as the nonsettling defendant, would have been relieved of the obligation of making up the difference. The time to judge the fairness of the *Pierringer* is at the time it is made; and if subsequent events sometimes result in a so-called "windfall" for plaintiff, that result is acceptable within the context of the law's strong policy to encourage settlement of disputes. Furthermore, the equitable principle of contribution that each defendant pays its fair share is not offended, but, indeed, reinforced by the *Pierringer* arrangement. If overall pro tanto reduction were superimposed on this arrangement, the settling parties could no longer settle piecemeal, and, as the court of appeals points out, the *Pierringer* would be effectively dismantled. *Rambaum,* 423 N.W.2d at 76–77. The nonsettling defendant, hoping the jury would provide a "windfall" which would work to its advantage, would also have a further reason for not settling its own liability exposure.

The parties discuss *Anunti v. Payette,* 268 N.W.2d 52 (Minn.1978); *Shantz v. Richview, Inc., supra;* and *Johnson v. Rogers,* 621 F.2d 300 (8th Cir.1980). These cases have distinguishing features, but they do indicate a concern of this court that defendants found liable at trial should not pay less than their fair share. One other point. In this case it appears that defendant Swisher has only $50,000 liability insurance, and it may be that the defendant Croatian Club will have to pay part of Swisher's share of the net verdict. The uncollectible portion of Swisher's share would, however, be reallocated between the Croatian Club and O'Neill's Bar. *See* Minn.Stat. § 604.02, subd. 2 (1986). But here again the Croatian Club is not prejudiced; it pays only its share. Either O'Neill's Bar pays its own share of the reallocated liability or the Croatian Club is relieved of paying O'Neill's share by the *Pierringer* release.

We hold, therefore, that the term "payments" as used in Minn.Stat. § 604.01, subd. 5, with respect to *Pierringer* settlements, refers only to payment for that portion of plaintiff's damages representing the settling defendant's share of the liability. The settlement payment does not extend to any further portion of plaintiff's award. In this case, only O'Neill's 10 percent share of the award is to be deducted from plaintiff's award.

### III.

The trial court discounted the award for future damages to present value pursuant to Minn.Stat. § 604.07 (1986). Plaintiff Raumbaum urges reversal of this discount because the statute was repealed while appellate review of this case was pending. We decline review.

This case was argued before the court of appeals on March 16, 1988. On April 12, 1988, the legislature repealed the discount statute, effective the next day, to "all cases pending * * *." 1988 Minn.Laws ch. 503 § 6. On April 26, the court of appeals filed its decision, and on May 25 defendant Croatian Club filed a petition for further review to this court. Plaintiff Rambaum filed no petition with us. In his respondent's brief in this court, plaintiff seeks to raise the discount repealer issue. Plaintiff cites *Olsen v. Special School Dist. No. 1,* 427

N.W.2d 707 (Minn.App.1988), a court of appeals decision issued July 29, 1988, holding that the repealer applies to cases pending appellate review as of the time the repealer was effective.

Defendant Croatian Club's petition for further review raised only the two issues adversely affecting it. *See* Minn.R.Civ. App.P. 117. To raise a new issue *for affirmative relief* which is entirely independent of the issues raised by the Club's petition, plaintiff Rambaum should have filed his own petition for further review. He did not do so. While the time to have called the court of appeals' attention to the legislature's repealer was very short, plaintiff did have an opportunity to raise the issue by petitioning this court. The issue was not, however, preserved for our attention nor do we consider this an occasion to invoke Minn.R.Civ.App.P. 103.04.

AFFIRMED.

POPOVICH, J., took no part in the consideration or decision of this case.