The issues in this case are 1) whether the sale of liquor by a private bar to a nonmember or nonguest is a sale "contrary to the provisions of law"; 2) whether testimony *Page 967 
by a police officer that a drinking establishment where he worked as a security guard regularly served liquor to intoxicated patrons was admissible; and 3) whether the trial court erred by failing to grant a judgment notwithstanding the verdict, on the basis that the defendant proved that the plaintiff had assumed the risk of riding with an intoxicated person and proved that there was a superseding cause of the plaintiff's injuries.
In July 1988, Melissa Baker, Judy Harris, and James Cobb were involved in an automobile accident after they had left the Attalla Golf and Country Club ("Attalla") drinking establishment. It was undisputed that the driver of the automobile, Baker, and the plaintiff, Harris, a passenger, had consumed alcohol at the bar; however, the amount of alcohol consumed was in dispute.
After leaving the bar at 5:30 a.m., Baker ran off the road and wrecked the automobile, causing Harris serious bodily injury. Baker alleges that she did not cause the accident, but that, instead, James Cobb, another passenger, caused it by grabbing the steering wheel from her and running the automobile off the road.
Harris sued Attalla for damages based on the injuries she received in the accident, alleging a violation of the Dram Shop Act, Ala. Code 1975, § 6-5-71. After the trial, the jury found in favor of Harris and ordered Attalla to pay damages. Attalla moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Attalla appeals.
 I.
Harris sued the defendants under the Dram Shop Act, which provides:
 "(a) Every wife, child, parent or other person who shall be injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
Ala. Code 1975, § 6-5-71. In order to show a violation of the Dram Shop Act the plaintiff must prove three elements: The sale must have 1) been contrary to the provisions of law; 2) been the cause of the intoxication; and 3) resulted in the plaintiff's injury.
Attalla argues that the trial court should have directed a verdict in its favor on the basis that Harris failed to prove that Attalla "caused" Baker's intoxication and failed to prove that the liquor was served "contrary to law."
This Court finds the argument that Harris failed to prove that the defendant "caused" the intoxication to be completely without merit, because it is difficult to imagine how the consumption of alcohol would not be related to the "cause" of intoxication.
It is undisputed that Attalla served Baker alcohol; only the amount was in dispute. Harris presented testimony that Baker consumed quite a bit of alcohol; therefore, Harris produced sufficient evidence for the issue to go to the jury, and the trial court did not err by failing to direct a verdict in favor of the defendant.
Attalla also argues that Harris did not prove that the bar served Baker liquor "contrary to the provisions of law." The jury was instructed as follows;
 "The Rules and Regulations of the Alabama Alcoholic Beverage Control Board have been introduced into evidence in this case. These Rules and Regulations have the full force and effect as the laws of Alabama. The Attalla Golf and Country Club has been issued a license from the ABC Board for a private club, Class II. A private club, Class II, is defined by the ABC Rules and Regulations as follows: A corporation or association organized or formed in good faith by authority of law [and] which must have at least 100 paid-up members. It must be the owner, lessee or occupant of an establishment operated solely for the objects of a national, social, patriotic, political *Page 968 
or athletic nature, or the like. The club shall hold regular meetings, continue its business through officers regularly elected, admit members by written application, investigation and ballot and charge and collect dues from elected members.
 "The Rules and Regulations also provide that no on-premises licensee may serve a person any alcoholic beverages if such person is acting in such a manner as to appear to be intoxicated.
 "It also provides that upon the filing of a membership application a club may, if it so desires, issue a temporary membership which may allow the applicant to use the facilities of the club until the application is processed, provided the temporary membership card may be valid for only thirty days and an applicant may only receive one temporary membership card per year. A membership card, permanent or temporary, may only be issued by an officer of the club or a person who has been issued a person-in-charge card.
 "The Country Club has been licensed as a private club. The distinction, ladies and gentlemen, I charge you, between a private club and a public club is that a public club must close and stop serving alcoholic beverages at 2:00 a.m. on Sunday morning. A private club does not have a closing time. It can remain open and sell intoxicating beverages or liquors 24 hours per day.
 "I charge you that the sale of liquor or alcoholic beverages by a private club to someone who is not a member or a guest of a member is contrary to law."
The trial judge instructed the jury that it could find a sale of liquor "contrary to the provisions of law" if it found either that the bar served Baker when she was "visibly intoxicated" or that she was not a member or a guest of the club.
Because the judgment was a general one, this Court does not know on which premise the jury found a sale "contrary to the provisions of law." It is well settled in Alabama that a sale to a visibly intoxicated person is "contrary to the provisions of law." Ala. Code 1975, § 28-3-49; ABC Board Regulations 20-x-6.02(4). However, whether the sale of alcoholic beverages by a private club to a nonmember or nonguest is illegal has never been addressed in Alabama.
Several jurisdictions have addressed this issue and have found that a sale of alcohol by a private club to a nonmember or a nonguest is a reason for suspension of a liquor license. See 48 C.J.S. Intoxicating Liquors § 167 p. 603 (1981); In reRoad Drivers' Association of Pennsylvania, 30 Pa. Commw. 323,373 A.2d 1161 (1977); In re Midway Athletic Association,189 Pa. Super. 336, 150 A.2d 377 (1959); In re Lehigh Valley BreweryWorkers Home Association Inc., 154 Pa. Super. 141, 35 A.2d 561
(1944); Mahoning County Citizen's Club v. Board of LiquorControl, 110 Ohio App. 549, 170 N.E.2d 84 (1959).
The Supreme Court of Minnesota addressed the issue of whether the sale to a nonmember or a nonguest was an "illegal" sale under the dram shop act and held the following:
 "The Civil Damages Act imposes dram shop liability for 'illegally selling' alcoholic beverages but does not define what is illegal. Does a liquor sale by a club licensed vendor to a person not a member or guest of the club constitute an 'illegal sale' under the Act? We answer yes."
Rambaum v. Swisher, 435 N.W.2d 19, 21 (Minn. 1989) (citations omitted).
Rambaum, arguably, is distinguishable from this case because there was a Minnesota statute stating that under a club license, "liquor sales will only be to members and bona fide guests," id., and Alabama statutes have no such requirement. Alabama, however, does require membership application and approval, as well as the payment of club dues, in order to join a private club. Without private club status, it would be illegal in Alabama for a club to sell alcohol on a Sunday. See Ala. Code 1975, § 28-3A-25(20), (21). Therefore, this Court holds that it is illegal for a private club to sell liquor or alcohol to a nonmember or a nonguest. *Page 969 
It is undisputed that Baker was not a current member of Attalla; she possessed an outdated membership card and was not on the current membership list. Furthermore, the articles of incorporation of the Attalla club stated that membership dues would be over $100, but the actual price charged for a membership card was only $1. As the trial judge stated, "Attalla presented one membership process to the ABC Board and utilized another. The effect of the new policy was that Attalla Golf and Country Club had become a public bar instead of a private club." Furthermore, Baker submitted no evidence that she was a guest of a member of Attalla.
There was evidence from which the jury could find that the sale of liquor to Baker was illegal both because she was "visibly intoxicated" and because she was not a member, or a guest of a member, of the club that served her liquor.
 II.
During the trial, the court allowed Harris to introduce testimony of an Etowah County sheriff's deputy to the effect that on many occasions in the early part of 1988 he saw Attalla Golf and Country Club serve "visibly intoxicated" patrons. The defendant objected and argues on appeal that the testimony was irrelevant and prejudicial.
Generally, evidence of a party's custom or habit is admissible for the purpose of allowing the inference that the person acted in keeping therewith. Dothard v. Cook,333 So.2d 576 (Ala. 1976), citing C. Gamble, McElroy's Alabama Evidence, § 42.01(1), p. 101 (4th ed. 1991).
 "A majority of the Alabama decisions hold that a person's habit is admissible as tending to prove his conduct on a particular occasion. Because human beings are the creatures of, and in large measure slaves to, their habits, it is submitted that these decisions are sound."
McElroy's, § 42.01(2) p. 102 (footnotes omitted). Because one of the issues in this case is whether Attalla served Baker while she was visibly intoxicated, evidence that it regularly served visibly intoxicated persons would be relevant.
Even if the testimony is relevant, however, it may be excluded when it serves little purpose except to arouse the passion, prejudice or sympathy of the jury. McElroy's, § 21.01(5) p. 37.
 "Trial judges have wide discretion to exclude or admit evidence even of minor probative value on issues litigated in cases. The test is that the evidence must only shed light on the main inquiry, and not withdraw attention from the main inquiry."
Ryan v. Acuff, 435 So.2d 1244 (Ala. 1983). The trial court's decision to admit the testimony will not be disturbed on appeal except for an abuse of discretion. We conclude that the testimony was admissible despite its possible prejudice and that the trial judge did not abuse his discretion by allowing it into evidence.
 III.
A. Assumption of the risk
Attalla argues that the trial court should have granted its motion for a judgment notwithstanding the verdict because, Attalla says, it presented evidence requiring a finding that Harris assumed the risk by riding in the car with Baker, if Baker was indeed intoxicated.
"Assumption of the risk proceeds from the injured person's actual awareness of the risk." McIsaac v. Monte Carlo Club,Inc., 587 So.2d 320, 324 (Ala. 1991). The plaintiff's state of mind is determined by using the "subjective" standard; the important issue is whether the plaintiff "actually knew" the risk, not whether the plaintiff "should have known the risk."Id.
Harris presented evidence that she was not with Baker much of the night at the club and that she was unaware of Baker's intoxication. In order to prove that Harris assumed the risk, Attalla must prove to the jury that Harris "actually knew" that Baker was intoxicated. The parties presented conflicting testimony, and the jury, as the factfinder, found that Harris did not have actual knowledge of *Page 970 
Baker's intoxication, and, therefore, could not have assumed the risk.
B. Superseding cause
Attalla also presented testimony that James Cobb caused the wreck by grabbing the steering wheel and turning the automobile off the road. Therefore, Attalla argues that Baker's intoxication was not the proximate cause of Harris's injuries.
This Court held in Laymon v. Braddock, 544 So.2d 900, 903
(Ala. 1989), the following:
 " '[T]he person injured by the illegal sale of alcoholic beverages is not held to the usual standards of proof of causal connection between the illegal sale of the beverages and the injury.' "
Quoting Phillips v. Derrick, 36 Ala. App. 244, 246,54 So.2d 320, 321 (1951). Generally, liability will be imposed only when the wrong is the "proximate cause" of an injury. Id. Under the Dram Shop Act, however, liability will be imposed when the wrong is "in consequence" of the illegal sale of liquor. This Court has recognized that a person selling alcoholic beverages is not responsible for all remote consequences that may result from an illegal sale. However, the question was submitted to the jury, and it either did not believe that Cobb caused the wreck or believed that had Baker been sober she could have prevented the wreck.
A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the "sufficiency test" presented by motions for directed verdict and JNOV.Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); AlpineBay Resorts, Inc. v. Wyatt, 539 So.2d 160 (Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen,567 So.2d at 1341. Denying a motion for new trial is within the sound discretion of the trial court. See, Hill v. Cherry,379 So.2d 590 (Ala. 1980). This Court will not reverse a judgment based on a jury verdict on a sufficiency-of-the-evidence basis unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was "plainly and palpably wrong and unjust." Christiansen, 567 So.2d at 1341. Based on our review of the record, we cannot say that the verdict was plainly and palpably wrong and unjust.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.