**Joseph L. KOEHNEN, petitioner, Appellant,**

v.

**Daniel R. DUFUOR, et al, defendants,**

**Rachel Sarah Paul, Respondent.**

**No. C7–97–1820.**

Supreme Court of Minnesota.

March 11, 1999.

David R. Knodell, Knodell Law Office, Hamel, for appellant.

David D. Alsop, Gregory A. Wohletz, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for respondent.

13. *See E.D.J.,* 502 N.W.2d at 783.

## OPINION

STRINGER, Justice.

We granted review to consider whether the Civil Damage Act, Minn.Stat. § 340A.801, subd. 1 (1998), applies to a non-commercial host who imposes a nominal charge for beer provided to a guest. Appellant Joseph Koehnen was injured by a guest who had consumed alcohol at respondent Rachel Paul's party after having paid a $4 charge. Appellant commenced this action against respondent, claiming that she violated the Civil Damages Act because she charged for beer at a party she hosted. The district court granted respondent's motion for summary judgment and held that the statute, as interpreted by this court in *Cady v. Coleman*,[1] applied only to commercial vendors and that as a social host, respondent was immune from liability. The court of appeals affirmed on the same grounds.[2] We likewise affirm.

The facts are not in dispute. On September 20, 1991, respondent, then 17 years old, hosted a party at her father's townhouse in Minnetonka, Minnesota. Respondent prepared for the party by inviting some of her close school friends, drew a map for several other friends who didn't know where she lived, and gave an adult acquaintance money to purchase a keg of beer for the party. Respondent planned to recoup the expense by charging her guests $2 to $4 for a glass which her guests could use for unlimited refills of beer, a practice common at parties she had attended. She paid a friend between $10 to $20 to collect the money and help control the guests if necessary. It apparently was no surprise to her that a number of uninvited guests arrived at her party throughout the course of the evening, including then 18–year–old David Ray Anderson

and his friends Gil Bukrinsky and Daniel R. Dufour, none of whom were known to respondent. Anderson drank at least six glasses of beer after paying his $4 charge.

On the same evening, appellant was drinking beer at a party at his adult sister's residence nearby. Noting the large group milling around outside respondent's home, appellant went outside to check on his expensive pickup truck parked in his sister's driveway. A confrontation occurred between appellant and a group including Anderson, Bukrinsky and Dufour as they departed from respondent's party. Anderson punched appellant in the face and appellant fell, hitting his head on the pavement and sustaining severe injuries.

Appellant sued respondent's parents, Dufour and his parents, Bukrinsky and his father, and Anderson on various theories of negligence, and sued respondent on a single statutory claim alleging a violation of the Civil Damages Act, Minn.Stat. § 340A.801, subd.1. All claims were resolved except those against Anderson—who was uninsured, judgment-proof and in default—and the claim against respondent.[3] The district court granted respondent's motion for summary judgment holding that the statute applied only to "commercial vendors" of alcohol and that as a "social host" respondent was immune from liability. The court of appeals affirmed,[4] and this appeal followed.

█ When reviewing a grant of summary judgment, this court will affirm unless there is a genuine issue of material fact or the court below erred in applying the law.[5] The parties disagree on the interpretation of the

---

1. 315 N.W.2d 593 (Minn.1982).

2. *Koehnen v. Dufour*, C7–97–1820, 1998 WL 188865 (Minn.App. Apr.21, 1998).

3. Respondent and appellant attempted to settle the claim against respondent using a *Miller v. Shugart* stipulation which provided that the settlement was only recoverable against respondent's mother's insurer. *See Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn.1982) (validating stipulated tort judgment which limited liability to

insurer). Respondent's mother's insurer removed the resulting garnishment proceeding to federal court where the stipulation was vacated and the claim remanded back to state district court. *See Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 527 (8th Cir.1996).

4. *Koehnen*, 1998 WL 188865 at *4.

5. *Art Goebel, Inc. v. North Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn.1997).

Civil Damages Act as applied to respondent, a question of law which we review de novo.[6]

At early common law, no cause of action existed for injury resulting from the sale of intoxicating beverages but in 1911 it was created by the adoption of Minnesota's Civil Damages Act (the Act).[7] The first version of the Act was entitled "An Act giving a right of action to certain persons, for injuries caused by any intoxicated person, or by the intoxication of any person, against any person causing the same in certain cases."[8] The language of the Act remained unchanged from its adoption until 1977 and provided:

> Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against *any person who, by illegally selling, bartering or giving* intoxicating liquors, caused the intoxication of such person * * *.[9]

The Act did not define the term "person" as it related to the provider, but in *Ross v. Ross* we determined that the Civil Damages Act applied to an adult brother who provided alcohol to a minor brother because the legislature intended the act to apply to "the casual donor who, as a host dispensing hospitality or in other social situations, dispenses liquor illegally."[10] We noted the broad sweep of the Act: "the conditions under which the act was adopted [in 1911] indicate a clear intent that it apply to everyone who violates the liquor laws."[11] The argument that a social host should be treated differently than a vendor under the statute was dismissed as being contrary to the legislative intent:

We have concluded that the circumstances surrounding the adoption of the Civil Damage [sic] Act in 1911 compel a finding that the legislature intended to create a new cause of action against every violator whether in the liquor business or not. It is significant that at that session the legislature seemed preoccupied with strengthening and tightening the liquor laws, using * * * the words 'any person' and making no mention anywhere of persons in the liquor business. Since the act applies only to illegal transactions, it is not unreasonable to assume that the legislature intended to include persons other than the licensed vendors * * *. While the act applies to those invited to wedding receptions and company picnics as well as to other gatherings where supervision may be onerous, no reason occurs to us why those who furnish liquor to others, even on social occasions, should not be responsible for protecting innocent third persons from the potential dangers of indiscriminately furnishing such hospitality.[12]

In affirming the district court ruling that the Act applied to a social host, the *Ross* court prophetically remarked that "[i]t may well be that the legislature in light of our present holding will amend the Civil Damage [sic] Act * * *. This, however, is not our prerogative."[13]

In 1977 the legislature did indeed amend the Act by deleting the word "giving" from the statute, limiting liability to "any person who, by illegally *selling or bartering* intoxicating liquors, causes * * * intoxication."[14] Five years later in *Cole v. City of Spring*

6. *See Dairyland Ins. Co. v. Starkey*, 535 N.W.2d 363, 364, (Minn.1995)

7. *See Beck v. Groe*, 245 Minn. 28, 33, 70 N.W.2d 886, 891 (1955); Michael K. Steenson, *With the Legislature's Permission and the Supreme Court's Consent, Common Law Social Host Liability Returns to Minnesota*, 21 Wm. Mitch. L.Rev. 45, 50 n. 14 (1995).

8. Civil Damages Act, ch. 175, § 1, 1911 Minn. Laws 221 (codified as Minn.Stat. § 3200 (1913)); *see also Ross v. Ross*, 294 Minn. 115, 118, 200 N.W.2d 149, 151 (1972).

9. Minn.Stat. § 3200 (1913) (emphasis added).

10. *Ross*, 294 Minn. at 117, 200 N.W.2d at 150. The younger brother in *Ross* had become intoxicated and was subsequently killed in a traffic accident caused by the intoxication. *Id.*

11. *Id.*

12. *Id.*, 294 Minn. at 121–22, 200 N.W.2d at 152–53 (footnote omitted).

13. *Id.*, 294 Minn. at 120, 200 N.W.2d at 152.

14. Act of June 2, 1977, ch. 390, § 1, 1977 Minn. Laws 887 (emphasis added) (codified as Minn. Stat. § 340.95 (1978)).

*Lake Park* we reviewed several consolidated cases brought under the Act, one involving a "kegger" hosted by two brothers at their parents' home at which several guests "contributed to the cost of the keg." [15] In dismissing the case against the hosts, the district court assumed that the intoxicated guest who injured the third party was served free beer.[16] On appeal we held that the amended Act "preempted any action against social hosts who give liquor to guests" [17] based on the history of the Act and the 1977 amendment.

> The transcript of the floor debate in the State Senate on the proposed amendment to delete "giving" from the Civil Damages Act clearly shows that the legislators know [sic] of the *Ross* decision, knew what results its application would produce, and purposefully proposed the amendment to change the law so that this court's interpretation of the Civil Damages Act would no longer be correct.[18]

We affirmed without addressing the issue of a social host who received a contribution toward the cost of the alcohol.

Just three weeks later we addressed the issue of a social host who provided alcohol in exchange for a contribution in *Cady v. Coleman.*[19] There an attorney bought drinks for a client's employee-manager who became intoxicated and caused an automobile accident in which the plaintiff was injured.[20] The district court denied defendant's motion for summary judgment "holding that the furnishing of liquor to [the employee-manager] could have been a barter, since [the attorney] provided him with entertainment with the expectation that he would continue to refer business to the law firm." [21] Two issues were raised on appeal to this court: "whether social hosts who barter or sell liquor to their guests may be liable under the Civil Damages Act," and, if so, whether buying drinks for a client was a form of barter.[22]

The *Cady* court reaffirmed *Cole,* holding that the Civil Damages Act exempted social hosts from liability and went on to further refine its analysis of the legislative intent behind the Act, this time relating to social hosts providing intoxicating beverages in exchange for consideration:

> We hold in this case that the Legislature intended to insulate social hosts from liability *regardless of the terms under which they provide their guests with liquor.* It is illogical to impose liability under the Act upon a social host who sells or barters liquor to a minor or an intoxicated person, but not upon one who gives it away. The argument that commercial vendors should be subject to liability because they profit by their sales and therefore should bear some of the risks created by their business does not apply with equal force to a social host, who is unlikely to make any profit even if he barters or sells liquor to guests. Moreover, it would be extremely difficult in a social setting to determine whether a barter or sale was either intended or consummated, and the results could be absurd in some cases. Would the Act apply, for example, if the host of a party accepted contributions from guests to pay for the liquor? Would a barter occur if guests were asked to bring food to a party where liquor was served? [23]

The court held that liability applied to any "person *in the business* of providing liquor, and not a social host who happens to receive some consideration from his guests in return for drinks he provides." [24] The Act simply was not applicable to the attorney as a social host and "because we have held that the statutory cause of action against social hosts 'was eliminated with the word "giving",' * * * respondents may not maintain their

15.   314 N.W.2d 836, 837–38 (Minn.1982).

16.   *Id.* at 838.

17.   *Id.* at 837.

18.   *Id.* at 839.

19.   315 N.W.2d 593 (Minn.1982).

20.   *Id.* at 594–95.

21.   *Id.* at 595.

22.   *Id.*

23.   *Cady,* 315 N.W.2d at 595 (emphasis added).

24.   *Id.* at 596 (emphasis added).

claim against appellants even if they could prove that a sale or barter had taken place." [25]

In 1985 the Civil Damages Act, which had been codified at Minn.Stat. § 340.95 (1984), was repealed and replaced by a new Civil Damages Act, Minn.Stat. § 340A.801 (1986). [26] The relevant portion of the Act was again amended, this time eliminating the term "bartered" and limiting liability exclusively to the *sale* of alcoholic beverages:

> **Right of action.** A spouse, child, parent, guardian, employer or other person injured in person, property, or means of support, by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against *a person who caused the intoxication of that person by illegally selling alcoholic beverages.* [27]

*Most significantly however, the new 1985 Civil Damages Act left untouched* the sweeping holding of our 1982 decision in *Cady* that only persons in the business of providing liquor are covered by the Act, and this court's flat-out rejection of appellant's argument, so energetically embraced by the dissent, that the status of a social host is lost if consideration is given in return for the drinks.

The Act was judicially reviewed again in *Rambaum v. Swisher* in the context of the sale of alcoholic beverages by a private club to a non-member. [28] We applied a two-part test to determine whether the particular sale was illegal. [29] The first part—whether the sale was in violation of Chapter 340A—was met since the sale of alcoholic beverages by a

private club to a non-member violated the terms of the club's license. [30] Only the second part of the test was at issue—whether the violation "*substantially related* to the purposes sought to be achieved by the Civil Damages Act." [31] We held that it was substantially related because the sale "impact[ed] on the public's access to and consumption of alcoholic beverages"—therefore it was an illegal sale. [32] But the court's holding was limited:

> We do not by this opinion purport to characterize what further violations of Chapter 340A, if any, might be covered under the Civil Damages Act. *Our decision is limited to club licenses under section 340A.404, subd. 1(3).* [33]

The evolution of the Act continued in 1985 when in *Holmquist v. Miller* we held that the Act preempted any common law action against social hosts who negligently served alcohol to a minor and that any expansion of coverage should be by legislative amendment. [34] The legislature responded by amending the Act as part of a 1990 tort reform package:

> **Subd. 6. Common law claims.** Nothing in this chapter precludes common law tort claims against any person 21 years old or older who knowingly provides or furnishes alcoholic beverages to a person under the age of 21 years. [35]

The import of this long history of legislative action/court interpretation "duet" is this: liability for injuries caused by illegal sale of liquor was unknown to the common law and is a part of our jurisprudence solely as a

**25.** *Id.*(citation omitted).

**26.** *See* Act of June 5, 1985, ch. 305, 1985 Minn. Laws 1454, 1454–1505 (repealing and replacing entire Liquor Act, including Civil Damages Act).

**27.** Minn.Stat. § 340A.801, subd. 1 (1986) (emphasis added) In 1987 the legislature added the phrase "or who incurs other pecuniary loss" after "means of support." Act of May 15, 1987, ch 152, art. 2, § 3, 1987 Minn. Laws 320, 321. Otherwise the statute has remained the same to date.

**28.** 435 N.W.2d 19, 21 (Minn.1989).

**29.** *Id.*

**30.** *Id.*

**31.** *Id.* (emphasis in original).

**32.** *Id.* at 22.

**33.** *Id.* (emphasis added).

**34.** 367 N.W.2d 468, 472 (Minn.1985).

**35.** Act of May 3, 1990, ch. 555, § 10, 1990 Minn. Laws 1557, 1561 (codified as Minn.Stat. § 340A.801). Since the Act as amended applied only to adult social hosts, it does not apply to respondent here, who was a 17–year old high school student at the time she hosted her party.

creature of the legislature. Where the legislature has perceived this court's holdings to have strayed from its intent, it has reacted by amending the Act accordingly.[36] This court's holding in *Cady* in 1982 clearly and unequivocally limited application of the Act to commercial vendors, and despite a recodification of the Act in 1984, a restatement in 1985 and an additional amendment in 1990, the *Cady* holding remains unchanged. Fundamental logic leads to the undeniable conclusion that *Cady* expresses the will of the legislature and legislative rules of construction so provide.[37]

Nonetheless, sweeping *Cady* aside as dictum, the dissent would take the law full circle. It would revert to *Ross v. Ross* where we held that social hosts were intended to be covered by the Act, ignoring the fact that the legislature nullified *Ross* when it amended the Act to delete coverage of those who give away alcoholic drinks. In stark contrast to the legislative response to *Ross*, after 17 years there has been no legislative response to *Cady*.

Appellant offers a number of contentions as to why, despite this procedural history, respondent should not be exempt from the Act. First appellant argues that a plain language reading of Minn.Stat. § 340A.801, subd. 1 sustains a cause of action against respondent because liability attaches to "a person" who "illegally sell[s]" alcohol and under a "plain language" interpretation, respondent, as "a person," should be liable. She charged a fee for the beer, therefore a sale took place—so appellant's argument goes.[38] But the interplay between decisions of this court and legislative enactments makes it clear that no such conclusion can be drawn. This is not an area of the law which suffers from legislative neglect. The Act is no stranger to the legislature; it has repealed, replaced, and subsequently amended it in the years since we ruled in *Cady* that the legislature intended to create immunity for social hosts, even if the host received consideration for the alcohol served.[39] The legislature amended the Civil Damages Act in 1985 and 1990 without extending liability to social hosts, and the rule of construction applies: "[w]hen a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language."[40] The legislature thus presumptively adopted the *Cole* and *Cady* rulings.

Appellant next argues that in *Rambaum* we held that any exchange of consideration for alcohol would constitute a "sale" without a license in violation of § 340A.702 (1) and consequently civil liability under the Act

36. *Compare Ross*, 294 Minn. at 120, 200 N.W.2d at 152, *with* Act of June 2, 1977, ch. 390, § 1, 1977 Minn. Laws 887.

37. *See* Minn.Stat. § 645.17, subd. 4 (1998) (stating that the proper presumption once a court of last resort has interpreted the language of a statute is that the legislature intends the same meaning in subsequent laws on the same subject).

38. The dissent agrees with the appellant and apparently chooses to interpret the court's plain language in *Cady* that liability applied to any "person in the business of providing liquor, and not a social host who happens to receive some consideration from his guests in return for drinks he provides," *Cady*, 315 N.W.2d at 596, as not necessarily precluding liability for those *not* in the business of providing liquor. The dissent's conclusion that because Paul received consideration, she was subject to liability is a significant departure from our holding in *Cady*. Despite the dissent's efforts to characterize Paul's party as a commercial enterprise, that is simply not the case—the party was at her father's home, friends were invited, the costs were off-set by a token charge of $2 to $4 charge for a glass with no charge for refills, and as might be expected, uninvited guests attended. That she may have more than recovered her costs by a nominal amount hardly puts Paul "in the business of providing liquor." The facts here are virtually indistinguishable from those in *Cole* where we affirmed the dismissal of dram shop claims against hosts who charged for beer at a "kegger" without even addressing the contention raised by the dissent that receiving consideration should change the host's status under the Civil Damages Act.

Nor is it the case that the *Cady* holding is mere dicta—based on the court's extensive analysis of the clear legislative intent, it unequivocally ruled: "respondents may not maintain their claim against appellants even if they could prove that a sale or barter had taken place." *Cady*, 315 N.W.2d at 596.

39. *Cady*, 315 N.W.2d at 595.

40. Minn.Stat. § 645.17, subd. 4.

would attach. This assertion ignores our explicit statement in *Rambaum* that our ruling was limited to club licenses,[41] and we decline to extend it here. Further, it is directly at odds with *Cady's* holding that the threshold between "social host" and "commercial vendor" requires more than the mere giving of consideration.

Last, appellant cites changes to other sections of Ch. 340A increasing the criminal penalties for the illegal sale of alcohol to minors as establishing a legislative intent to repudiate *Cady* and extend civil liability under the Act to social hosts. This argument is unpersuasive in the context of the Act being twice amended since *Cady* without any suggestion of discontent with our holding in that case.

While the legislature may decide that the reach of the Civil Damages Act needs to be revisited and amended, it is not our prerogative to do so as we said in *Ross v. Ross*.[42] Our court precedent and respect for the separation of powers doctrine dictates no other result. Accordingly, we conclude that as a social host, respondent is immune from liability under the Civil Damages Act, Minn.Stat. § 340A.801, subd. 1, and affirm the court of appeals.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. A person is a person is a person ...,[1] and an illegal sale is an illegal sale is an illegal sale ...

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion. By insulating the respondent, Rachel Paul, from any liability for her participation in illegally selling intoxicating beverages to minors, the majority opinion not only ignores the plain language of the Civil Damages Act, but also expands the term "social host" to include a person who admittedly made an illegal sale of intoxicating beverages.

The majority's reasoning focuses on the lengthy legislative history of the Civil Damages Act. However, legislative history is only to be used as a tool for construing statutory language when the legislative language is ambiguous or not explicit. When the words of the law are clear and free from all ambiguity, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." [1] The language of the Civil Damages Act clearly and unambiguously provides that a cause of action exists "against a person who caused the intoxication of [one who injures another person] by illegally selling alcoholic beverages." [2] The majority opinion disregards the letter of the law under the pretext of pursuing the spirit of the judicially-created social host exception to this statute.

Paul collected approximately $190 and made a $70 profit by selling alcohol to 50 to 70 minors present at her father's home on the night in question. Those sales were illegal: not only did Paul lack a liquor license,[3] but Paul, herself a minor, sold alcohol to others under the age of 21.[4] At oral argument, Paul's counsel conceded that the furnishing of alcoholic beverages was an illegal sale under these facts.

While it is undisputed that Paul, herself a minor, illegally provided other minors with intoxicating beverages, the majority nonetheless insulates her from liability under the judicially-created "social host" exception to the Act. We have previously held that a social host is not liable under the Act. [5] However, we have yet to define the term "social host," and have previously applied the term only to situations where intoxicating beverages were given away. We have never held that the Act applies *only* to commercial vendors. Without defining the term social host

41. 435 N.W.2d at 22.

42. *Ross*, 294 Minn. at 120, 200 N.W.2d at 152.

1. *See* Dr. Seuss, Horton Hears a Who! (1954).

1. Minn.Stat. § 645.16 (1998).

2. Minn.Stat. § 340A.801, subd. 1 (1998).

3. Minn. Stat. § 340A.301, subd. 1 (1998).

4. Minn. Stat. § 340A.503, subd. 1 (1998).

5. *Cady v. Coleman*, 315 N.W.2d 593, 595 (Minn. 1982).

or even analyzing whether Paul falls within that category, the majority summarily concludes that summary judgment is appropriate because Paul was a social host. For several reasons, I have difficulty with that conclusion.

First, the Act provides a cause of action against "*a person* who causes the intoxication of [one who injures another] by illegally selling alcoholic beverages."[6] As Justice Page's dissent so eloquently reminds us, Paul is a person. Just a few short months ago, we addressed the definition of the phrase "other person" as used in reference to determine who is eligible to bring a cause of action under the Act.[7] We held that the Act is to be liberally construed in order to further its purpose of suppressing "the illegal furnishing of liquor causing a person's intoxication," and thus that the phrase "other person" meant *any* person injured by an intoxicated individual.[8] Yet today the majority ignores our recent holding and instead effectively holds that Paul is not a "person" within the scope of the Act. It seems to me if we are to construe the term "person" in a way that furthers the purpose of the Act, at a minimum that term should be construed to impose liability on a "person" such as Paul, who profited by illegally selling alcoholic beverages to a large number of minors. Any other interpretation of the word "person" destroys the plain meaning of this word in this remedial statute, and thereby violates our long established rule of interpreting an unambiguous statute in accordance with its plain language.[9]

Even more troubling than the majority's exclusion of Paul from the category of "persons" is the majority's summary classification of her as a "social host." While this might be an appropriate determination in other contexts, this classification is erroneous under the facts of this case. When we have previously applied the definition of "social host," it has been limited to those giving away intoxicating beverages. In *Cole,* we emphasized the legislature's removal of the word "giving" from the Civil Damages Act.[10] We thus applied the term "social host" to a sister who gave alcohol to her brother, to an individual who provided free beer to a guest at a party where other guests contributed to the cost of the beer, and to an individual who served alcohol "gratuitously" to a guest at a wedding reception.[11] Despite this limited holding of *Cole,* the majority's use of the term today suggests that "social host" means anyone other than a commercial vendor. Considering the fact-specific nature of the *Cady* and *Cole* decisions, this construction of the term "social host" constitutes a major change in the law.

It is true that Paul did not have a liquor license and was not in the business of regularly selling alcoholic beverages out of her father's home. The majority relies on dicta from *Cady* to conclude that because Paul is not "in the business of providing liquor," she qualifies as a social host.[12] However, this conclusion ignores the true holding of *Cady* and the consideration paid in this case. In *Cady,* we held that an exemption applied to "a social host who happen[ed] to receive some consideration from his guests in return for drinks he provided."[13] This phrase can not, and should not, be read to insulate all people except commercial vendors from liability. In *Cady,* we also specifically held that "no barter took place because no consideration was given in exchange for appellant's liquor. * * * * Consideration requires the voluntary assumption of an obligation by one

---

6. Minn.Stat. § 340A.801, subd. 1 (emphasis added).

7. *Lefto v. Hoggsbreath Enterprises, Inc.,* 581 N.W.2d 855, 857 (Minn.1998).

8. *Id.*

9. *See* Minn.Stat. § 645.16 (1998); *Peterson v. Halvorson,* 200 Minn. 253, 255, 273 N.W. 812, 813 (1937). .

10. *Cole v. City of Spring Lake Park,* 314 N.W.2d 836 (Minn.1982). This removal followed our de-

cision in *Ross v. Ross,* 294 Minn. 115, 200 N.W.2d 149 (1972), where we imposed liability on a 19–year–old who gratuitously provided two minors, including his younger brother, with intoxicating beverages. *Id.* at 120, 200 N.W.2d at 152.

11. *Cole,* 314 N.W.2d at 837–38.

12. *See Cady,* 315 N.W.2d at 596.

13. *Id.*

party on the condition of an act or forbearance by the other." [14]

The facts of this case simply do not support the conclusion that Paul gave away intoxicating beverages and only "happened" to receive consideration from those present at her father's home. Instead, she planned and organized this party, had an adult purchase kegs of beer and hired an adult to collect money and essentially serve as a bouncer for the party. Rather than merely accepting contributions from friends or relatives to cover costs, Paul gained a profit by charging strangers admission to enter the home. Paul admitted that she was personally acquainted with only 5 of the 50 to 70 people present. No one was permitted to enter or to partake of the beverages unless they paid this admission fee. Not only did Paul recoup her costs for the evening, she also profited $70, no small sum for a 17-year-old providing two kegs of beer to minors. Under these facts, I have difficulty reaching the conclusion that Paul was merely a social host who just happened to receive some consideration.

To ignore the simple and basic facts of this case and hold that Paul is a social host is to offer other minors a consequence-free means of earning a profit while providing alcohol to friends and strangers alike.[15] The facts before us are not analogous to a social situation such as a football party, card game, or weekend gathering where friends gather to socialize and, to help cover costs, the host accepts contributions from social acquaintances. Paul did not invite friends and acquaintances into her home with the intention of socializing; instead, she charged admission to strangers who came to her father's home to drink intoxicating beverages. As could be expected, one of these strangers who bought beer from Paul became intoxicated and severely injured another person. Insulating Paul from liability under these circumstances is a result likely unintended by the legislature and violative of the purposes of the Act. The majority opinion uses dicta from prior cases to override the plain language of this statute. It may well be that, in light of the majority's holding, the legislature will amend the Civil Damages Act to address the liability gap resulting from this judicially-created immunity doctrine.

PAGE, Justice (dissenting).

I join in the dissent of Justice Gilbert.

PAUL H. ANDERSON, Justice (dissenting).

I join in the dissent of Justice Gilbert.

---

**14.** *Id.*

**15.** The notion that other minors might participate in similar activities with similar consequences is not unfounded. Paul herself admitted

that the idea to charge admission came from other parties that she had attended at which admission was charged.