Terri L. CARLSON as Trustee for the Heirs and Next of Kin of Ronald J. Carlson, and Terri J. Carlson, individually and as parent and natural guardian for Alexis L. Carlson, Tyler J. Carlson and Joshua T. Hardman, minors, Respondent,

v.

Eric B. THOMPSON, et al., Defendants,

City of Byron Firefighters Relief Association, Appellant.

No. CX–00–222.

Court of Appeals of Minnesota.

Aug. 1, 2000.

Review Denied Oct. 17, 2000.*

* BLATZ, C.J., took no part in the consideration or decision of this case.

John M. Sheran, Daniel P. Tschida, Leonard, Street and Deinard, P.A., Minneapolis, for respondents.

Eric J. Magnuson, Mark A. Solheim, Steven Kluz, Jr., Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for appellant.

Considered and decided by AMUNDSON, Presiding Judge, CRIPPEN, Judge, and ANDERSON, Judge.

## OPINION

CRIPPEN, Judge.

Appellant Firefighters Relief Association challenges the trial court's summary judgment that it is liable in a civil damages act suit when it charged defendant Eric Thompson an admission fee, sold beer tickets to him, and later provided him alcoholic beverages when he was obviously intoxicated, resulting in damages suffered by the respondents Terri Carlson and other heirs of her deceased husband. We affirm.

## FACTS

The parties have stipulated to the facts. In July 1998, appellant held a Firefighters Relief Association dance, an event for which appellant obtained a license to sell non-intoxicating liquor to the public. At around 9:00 p.m., Thompson arrived at the dance, paid a $5 entrance fee, entered an enclosed area where beer was sold and a band was playing, and Thompson purchased 5 to 10 beer tickets.

Thompson, who was not obviously intoxicated at this time, used one or two of the beer tickets to procure a beer. He then obtained more drinks but never gave anybody his remaining tickets. The Association continued to serve Thompson beer, without collecting further money or beer tickets, until he had consumed several beers. Thompson became obviously intoxicated at some point, and the Association continued to serve him beer.

Thompson left the dance at around 11:45. He drove away in his car and subsequently struck respondent and her husband, killing respondent's husband and injuring respondent. The parties stipulated that the beer Thompson was served at the party resulted in Thompson's intoxication and that the accident was directly caused by Thompson's intoxication. Respondent sued appellant under the Civil Damages Act, Minn.Stat. § 340A.801 (1998). After cross-motions for summary judgment, on stipulated facts, the trial court granted judgment to respondent.

## ISSUE

Was respondent entitled to a judgment on its civil-damages-act claim?

## ANALYSIS

■ When there are no genuine issues of material fact, an appellate court asks "whether the lower court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). Similarly, the application of a statute to the undisputed facts of a case involves a question of law, and the trial court's decision is not binding on this court. *Boubelik v. Liberty State Bank,* 553 N.W.2d 393, 402 (Minn.1996).

■ The civil damages act provides that a person who incurs a pecuniary loss as a result of the intoxication of another party has a right of action against a person who caused the intoxication of that person by "illegally selling alcoholic beverages." Minn.Stat. § 340A.801, subd. 1 (1998). The occurrence of a sale of alcohol is an important element of a civil damages act claim and the only element at issue in this case. *See Rambaum v. Swisher,* 435 N.W.2d 19, 21 (Minn.1989) (stating ele-

ments of civil damages act claims, including an illegal sale and the occurrence of a sale violation that "substantially relate(s) to the purposes sought to be achieved by the civil damages act").

■ Thompson paid admission charges and bought beer tickets and was in that sense a paying customer who anticipated the serving of beer for his payment. This transaction took place in the ordinary course of a commercial vendor's business, enlarging its prospect for profits in the serving of drinks. The trial court properly adjudged the transaction a sale of beers that were served.

■ We are mindful in affirming the trial court's judgment that we should avoid a hypertechnical determination of whether a sale was consummated or intended. *See Cady v. Coleman,* 315 N.W.2d 593, 595–96 (Minn.1982). Such an approach, among other things, permits practices designed to frustrate application of the act. We account for the fundamental purpose of the act to uphold liability in respect to people engaged in a business, making a profit in the provision of liquor. *See Koehnen v. Dufuor,* 590 N.W.2d 107, 112 (Minn.1999); *see also Cady,* 315 N.W.2d at 596. Although the Act is not to be construed "beyond its definite scope," it is to be liberally construed to the ends of suppressing the illegal furnishing of liquor that causes a person's intoxication and providing compensation for those who are injured as a result of this conduct. *Lefto v. Hoggsbreath Enterprises, Inc.* 581 N.W.2d 855, 857 (Minn.1998) (citation omitted).

Respondent's argument, suggesting that the legislature's various amendments of the Act show the clear responsibility of licensed vendors, takes us beyond the study of the transaction in this case.[1] This

1. The Minnesota Supreme Court has interpreted the meaning of the amendments eliminating the "gift" of alcoholic beverages as a declaration regarding the persons covered, holding, as a result, that a social host is never civilly liable, even when there has been a sale. *See Koehnen,* 590 N.W.2d at 112. *See also*

*Cady,* 315 N.W.2d at 595 (one of the reasons commercial vendors are subject to liability under the act is that "they profit by their sales and therefore should bear some of the risks created by their business;" this argument is inapplicable to social hosts).

argument suggests that the Act extends to purely gratuitous furnishing of liquor by a vendor. Because we are not dealing with such a case of pure gratuity, we needn't reach this question.[2] It is unclear in this case whether the tickets purchased by Thompson were delivered to the vendor by Thompson or anyone else. But appellant's conduct is sufficient to demonstrate a sale for the purposes of the Act, with consideration furnished for the delivery of drinks, where appellant imposed charges on Thompson for drinking and then served drinks to him, and this conduct occurred in the ordinary course of appellant's business as a commercial vendor.

## DECISION

■ The trial court properly granted summary judgment to respondent. The civil damages act will apply where there is adequate evidence of consideration charged for the serving of an alcoholic beverage by a commercial vendor to an obviously intoxicated person.

**Affirmed.**

G. BARRY ANDERSON, Judge (dissenting).

I respectfully dissent because I do not believe that there is evidence in the record establishing that a sale of alcoholic beverages took place at a time when Eric Thompson was obviously intoxicated.

Respondent places great weight on the cover charge paid by Thompson and the beer tickets purchased by Thompson. While the stipulated facts make clear that Thompson used the tickets to purchase beer when he was not obviously intoxicated, the stipulated facts also make equally clear that, after the initial exchange of tickets for beer, no further consideration

passed between Thompson and the Fire Fighters Relief Association. Critically, after using one or two tickets, the stipulated facts lay out what followed,

> Thompson gave the remainder or his tickets to a friend, and from that point forward, the Fire Fighter's (sic) continued to serve Thompson beer but they did not collect any additional tickets. At no time did Thompson expect or receive a refund for the unused tickets he had purchased. By 10:30 p.m., Thompson had become obviously intoxicated, however, the Fire Fighters continued to serve Thompson beer, as indicated, without an exchange of tickets. The beer served to Thompson between 10:30 p.m. and 11:45 p.m. further contributed to his intoxication.

Thompson's decision to give away his tickets is the critical fact upon which liability pivots. The medium of exchange in this case, beer tickets, is no longer in his possession following his decision to give those tickets away. This is not a mildly interesting fact or something of historical interest; it is critical to establishing liability under the Civil Damages Act. A right of action exists against the person causing intoxication of that person only by "*illegally selling* alcoholic beverages." Minn.Stat. § 348.801 (1998) (emphasis added). As the supreme court recognized in *Koehnen v. Dufuor*, 590 N.W.2d 107 (Minn.1999), in discussing the legislative history of the Civil Damages Act, the legislature clearly recognized the difference between sales and gifts because in 1977 the legislature amended the act by deleting the word "giving" from the statute.

It certainly is possible to construct scenarios involving cover charges and beer tickets where liability could exist under the Civil Damages Act, but those are not our

---

2. Appellant observes, in refutation, that the Minnesota Supreme Court's social-host analysis narrows the scope of coverage of the Act, eliminating some coverage for some sales, and appellant argues that an extension of liability to a commercial vendor for gifts would be an enlargement of the application of

the statute, potentially contradicting the proposition that the statute will be strictly construed. *See Lefto*, 581 N.W.2d at 857 (while generally the statute is to be liberally construed, it "is to be strictly construed in the sense that it cannot be enlarged beyond its definite scope") (quotation omitted).

facts. Here, there is no dispute that the medium of exchange then prevailing for the sale of alcohol in exchange of tickets for beer was not used and beer was simply given to Thompson over an extended period of time while he was obviously intoxicated. There is thus no illegal sale of an alcoholic beverage and no liability can be imposed on appellant. If the legislature had intended that commercial vendors incur liability for the illegal provision or gift of alcohol it could have done so. It did not.

Under these circumstances, while the result is unsatisfactory from an equitable viewpoint, I believe the conclusion is inescapable that no liability under the Civil Damages Act attaches to appellant and reversal is required.