_____

No. 95-2142
_____

Joseph L. Koehnen,                    *
                                      *
     Plaintiff - Appellant,           *
                                      *
v.                                    *
                                      *   Appeal  from  the  United  States
                                      *
Herald Fire Insurance Company,        *   District Court for the
                                      *   District of Minnesota.
     Defendant/Garnishee -            *
     Appellee,                        *
                                      *
Rachel Sarah Paul,                    *
                                      *
     Defendant.                       *
                                  _____

             Submitted:  December 14, 1995

                  Filed:  July 11, 1996
                                  _____

Before BOWMAN and LOKEN, Circuit Judges, and WOLLE,* Chief District Judge.
                                  _____

LOKEN, Circuit Judge.

     When a liability insurer denies coverage and refuses to defend its
insured, Minnesota law allows the plaintiff-claimant and the defendant-
insured to enter into a "Miller-Shugart" settlement, collectible only from
the insurer.  The plaintiff then proceeds against the insurer by a
garnishment action, seeking to establish coverage and collect the
settlement.  See Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982).  In this
case, Joseph Koehnen is the

_____

     *The HONORABLE CHARLES R. WOLLE, Chief United States District
Judge for the Southern District of Iowa, sitting by designation.

personal injury plaintiff. He entered into a Miller-Shugart settlement with defendant Rachel Paul, collectible only from the proceeds of the homeowner's insurance policy issued by Herald Fire Insurance Company to Rachel's mother. When Koehnen proceeded by garnishment action in Minnesota state court, Herald Fire removed. The district court[1] denied Koehnen's motion to remand the action to state court and affirmed the magistrate judge's[2] decision denying Koehnen leave to file a garnishment complaint because the settlement is unreasonable. Koehnen appeals both rulings, which terminated the removed action. We affirm.

## I. Background.

Rachel Paul's parents divorced in 1988. The divorce decree provides that Rachel's mother has legal custody of Rachel, that her parents "share the parental responsibility," and that Florida is her "primary physical residence." Rachel moved with her mother to Florida in 1988 but returned to Minnesota in 1989 to complete high school. While in Minnesota, Rachel lived with her father. She visited her mother in Florida from time to time before completing high school in 1992, including a two-month summer visit in 1990. On September 20, 1991, Rachel hosted a party at her father's home, providing two kegs of beer and selling cups to those who attended. Three underaged, beer-drinking guests attacked Koehnen, who was visiting a neighbor, inflicting permanent head injuries. Koehnen sued Rachel, her father and mother, the assailants, and their parents in Minnesota state court.

Koehnen sought damages from Rachel and her parents under the Minnesota Civil Damages Act, Minn. Stat. Ann. § 340A.801, subd. 1

_____

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

[2]The HONORABLE ANN D. MONTGOMERY, United States Magistrate Judge for the District of Minnesota.

(also known as the Dram Shop Act), on the ground that Rachel illegally sold liquor to the assailants. Mr. Paul's insurer agreed to defend Rachel and her father. Herald Fire agreed to defend its named insured, Rachel's mother, but declined to defend Rachel, claiming that she was not a policy "insured." Herald Fire's letter declining to defend noted that Rachel was being defended by her father's insurer.

Without Herald Fire's participation, Rachel and Koehnen settled his claim against Rachel by stipulating to the entry of judgment in the amount of $325,000 to be satisfied "from insurance coverage available to Rachel Paul under the [Herald Fire] policy." Judgment was entered in accordance with this Stipulation in state court. Now a judgment creditor, Koehnen served a garnishment summons on Herald Fire. See Minn. Stat. Ann. § 571.72, subd. 2. When Herald Fire denied liability, Koehnen moved for leave to file a supplemental garnishment complaint to recover his judgment against Rachel from Herald Fire. See Minn. Stat. Ann. § 571.75. Herald Fire removed the garnishment action before the state court ruled. See Randolph v. Employers Mut. Liab. Ins. Co., 260 F.2d 461, 463-64 (8th Cir. 1958) (as a matter of federal law, garnishment is a separate proceeding for removal purposes), cert. denied, 359 U.S. 909 (1959); 1A James W. Moore & Brett A. Ringle, Moore's Federal Practice ¶ 0.167[12.--3], at 526-27 (2d ed. 1996).

## II. The Remand Issue.

A notice of removal "shall be filed" within thirty days after defendant receives "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Herald Fire filed its notice of removal on January 3, 1995, more than thirty days after it received Koehnen's November 1994 garnishment summons, but within thirty days

-3-

of receiving Koehnen's motion for leave to file a supplemental complaint in the state court.

A party objecting to removal must file a motion to remand "within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). Within thirty days after Herald Fire removed, Koehnen filed a motion to remand on the ground that removal was untimely. However, nine days earlier, Koehnen had moved the district court for leave to file a supplemental complaint against Herald Fire.[3] Koehnen vigorously argued that motion, and Magistrate Judge Montgomery ruled in Herald Fire's favor before the district court heard Koehnen's motion to remand. In these circumstances, the court held that Koehnen had waived his right to seek remand. The court explained: "Having received an adverse ruling in federal court [from Magistrate Judge Montgomery], pursuant to his own motion, Koehnen will not be allowed to obtain a 'second bite at the apple' in state court. . . . Based on Koehnen's affirmative federal court conduct, remand in this matter would be offensive to fundamental principles of fairness." We agree.

A procedural defect in removal, such as untimeliness, does not affect the federal court's subject matter jurisdiction and therefore may be waived. See Nolan v. Prime Tanning Co., 871 F.2d 76, 78 (8th Cir. 1989). Federal courts consider a number of factors in determining whether a party has waived its right to seek remand. See Midwestern Distrib., Inc. v. Paris Motor Freight Lines, Inc., 563 F. Supp. 489, 493-95 (E.D. Ark. 1983). A party that engages in affirmative activity in federal court typically waives the right to seek a remand, see Financial Timing Pubs., Inc. v. Compugraphic Corp., 893 F.2d 936, 940 (8th Cir. 1990),

---

[3]This filing was unnecessary as a matter of state law because removal "carries with it all pending proceedings" in the state court garnishment action. Minn. Stat. Ann. § 571.87.

particularly if the federal court has ruled unfavorably, see Nolan, 871 F.2d at 78-79.

In this case, Koehnen affirmatively sought leave to file a new complaint in federal court. By the "mere filing of an amended petition," Koehnen "consented to accept the jurisdiction of the United States court." In re Moore, 209 U.S. 490, 496 (1908), overruled in part on other grounds by Ex parte Harding, 219 U.S. 363 (1911). He then filed a motion to remand, but instead of seeking to withdraw or stay his prior motion until the remand motion could be decided, Koehnen vigorously briefed and argued his substantive motion. Only when Magistrate Judge Montgomery denied that motion -- a ruling that was effectively a dispositive order -- did Koehnen press the district court to remand. In these circumstances, if there was discretion to rule that the right to seek remand had been waived, the district court plainly did not abuse that discretion.

Koehnen argues that the 1988 amendment to 28 U.S.C. § 1447(c)[4] implicitly abolished the discretionary waiver doctrine by imposing a thirty-day time limit on motions to remand. There is no hint of such an intent in the limited legislative history, which instead manifests a concern that the former § 1447(c) had unwisely *allowed* litigants to seek remand after receiving unfavorable rulings in federal court. See H.R. Rep. No. 889, 100th Cong., 2d Sess. 72 (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6033. Like the Fifth Circuit, "we are persuaded that [amended] section 1447(c) is a mere reconstitution of the existing statute and jurisprudence." In re Medscope Marine Ltd., 972 F.2d 107, 109 (5th Cir. 1992). Therefore, the district court retained, and did not abuse, the discretion to deny Koehnen's timely motion to remand on the ground

---

[4]The Judicial Improvements and Access to Justice Act, P.L. No. 100-702, § 1016(c), 102 Stat. 4642, 4670 (1988).

that his prior affirmative conduct in federal court had waived his right to seek remand on non-jurisdictional grounds.[5]

### III. The Merits.

Under Minnesota law, if a garnishee denies liability to the judgment debtor, the judgment creditor-plaintiff may file a supplemental complaint against the garnishee if the creditor shows "probable cause" that the garnishee may be liable. Minn. Stat. Ann. § 571.75, subd. 4. In this context, probable cause means a showing that the liability insurer may be obligated to indemnify the judgment debtor for all or part of the Miller-Shugart judgment. See Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co., 380 N.W.2d 225, 227 (Minn. App. 1986).

The judgment creditor-plaintiff seeking to enforce a Miller-Shugart settlement must prove more than insurance coverage. Because the settling defendant's insurer declined to defend, it did not assume the liability insurer's customary control over the settlement process. And the settling insured, who will not be personally liable to pay the Miller-Shugart settlement, "has no incentive to drive a hard bargain," that is, "no compunction to agreeing that judgment may be entered against him for the policy limits, even if the claim is worth less than the policy limits, if it is worth anything." Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277, 280 (Minn. 1990). To guard against the obvious risk of unfairness, Koehnen as judgment creditor-plaintiff must prove not only insurance coverage, but also the absence of fraud or collusion and that the Miller-Shugart settlement is reasonable. Miller, 316 N.W.2d at 734-35. The district court found probable cause "with

---

[5]We therefore need not decide which of Koehnen's state court filings was the "initial pleading" for removal purposes -- his garnishment summons to Herald Fire, or his state court motion to file a supplemental complaint after Herald Fire had denied garnishee liability.

-6-

respect to the issue of coverage" but concluded that the settlement is unreasonable because Rachel as a social host is not liable to Koehnen under the Civil Damages Act. Without reaching those issues, we conclude that the settlement is collusive.

In most cases, the only potential collusion is between the insured and the plaintiff, and the collusion inquiry is therefore satisfied by determining whether the settlement is reasonable. See Independent Sch. Dist. No. 197 v. Accident & Cas. Ins., 525 N.W.2d 600, 607 (Minn. App. 1995). But this case is unusual. The Miller-Shugart doctrine was fashioned to protect an insured who has been left to her own defenses because the insurer refuses to defend against the plaintiff's liability claim. The insured may escape this costly dilemma if the plaintiff is willing to undertake the burden and risk of collecting the Miller-Shugart settlement from the insurer. Here, on the other hand, Herald Fire did not leave Rachel Paul to her own defenses, as she was being defended by her father's insurer. Thus, the practical significance of Herald Fire's refusal to defend was to signal its likely unwillingness to contribute to a settlement on Rachel's behalf or to admit a duty to indemnify her for any judgment in Koehnen's favor.

This set the stage for an atypical Miller-Shugart settlement. Counsel representing Rachel, selected by Mr. Paul's insurer, agreed to settle Koehnen's claim against Rachel for $325,000, *to be collected only from another insurer, Herald Fire.* In substance, because even an unreasonable Miller-Shugart settlement is binding on plaintiff and the insured, the insurer that had agreed to defend Rachel thereby shifted the entire risk that she might be liable to an insurer that denied it was even obligated to defend. By the same token, Koehnen relinquished his right to collect anything from the insurer that had admitted a duty to defend, in exchange for a stipulated judgment collectible only from a non-participating insurer with a far more remote connection to the events in question. From Koehnen's perspective, this settlement is rational

only if he has a better chance of proving coverage and reasonableness against Herald Fire, than of proving liability and damages against an insurer-defended Rachel Paul. Thus, Koehnen argues on appeal that we may not consider Rachel's liability to Koehnen in determining whether the Miller-Shugart settlement is reasonable, confirming that his objective in settling was not to find a "deep pocket," but to escape the need to prove liability.

In these circumstances, we conclude that the settlement is collusive as a matter of law. It is not collusive in the ethical sense that any of the attorney-negotiators did not fairly represent a client's interest. It is collusive in the legal sense because it deprived Herald Fire of its right to participate in the settlement process even though the insured, Rachel Paul, was adequately defended and therefore did not require the protections of the Miller-Shugart doctrine. Cf. Buysse v. Baumann-Furrie & Co., 448 N.W.2d 865, 872-73 (Minn. 1989) (subsequent history omitted).[6]

## IV. Conclusion.

In the typical Miller-Shugart case, if there is coverage but the settlement is unreasonable, the underlying tort claim is reinstated for trial. See Alton M. Johnson, 463 N.W.2d at 280. In this case, because the settlement must be set aside as collusive and outside the purview of the Miller-Shugart doctrine, we conclude that the litigating parties should likewise be returned to the *status quo ante*. See Sturm v. School-Dist. No. 70, 47 N.W. 462 (Minn. 1890). Therefore, Koehnen's claim against Rachel Paul is reinstated. Rachel will continue to be defended in the underlying action by her father's insurer. The district court's rulings (i) that there is probable cause to conclude that Rachel is covered

---

[6]In addition, it appears that the settlement is unreasonable as a matter of law because it did not allocate liability among the defendants in the underlying tort action. See Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d 323, 331 (Minn. 1993).

-8-

under the Herald Fire policy, and (ii) that Rachel as a social host is not liable for Koehnen's injuries under the Minnesota Civil Damages Act, are vacated as moot. As there is no diversity jurisdiction over the underlying tort action, all remaining issues must be decided by the Minnesota courts.

The judgment of the district court denying leave to file a supplemental complaint and dismissing this garnishment action is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.