**Lalanya RIGGS, Plaintiff,**

v.

**PLAID PANTRIES, INC., et al., Defendants.**

**No. CIV–01–338–HU.**

United States District Court, D. Oregon.

Sept. 12, 2001.

Heather E. Carey, Green & Markley, P.C., Portland, OR, for Plaintiff.

David G. Hosenpud, Lane Powell Spears Lubersky, Karen O'Kasey, Schwabe Williamson & Wyatt, Michael J. Wiswall, Hoffman Hart & Wagner, David B. Wagner, Portland, OR, for Defendants.

### ORDER

ROBERT E. JONES, District Judge.

Magistrate Judge Dennis James Hubel filed Findings and Recommendation (# 43) on July 26, 2001, in the above-entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983). Having reviewed the legal principles *de novo*, I find no error.

Accordingly, I ADOPT Magistrate Judge Hubel's Findings and Recommendation (# 43) dated July 25, 2001, in its entirety. Plaintiff's motion to remand (# 10) is DENIED.

IT IS SO ORDERED.

### FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge.

Plaintiff Lalanya Riggs brings this employment discrimination and tort action against her former employer Plaid Pantries, Inc., her former supervisor Ali Karimi–Beikabaki, and two of his friends. Plaid Pantries removed the case from state court to this court. Plaintiff moves to remand the case back to state court. I recommend that the motion be denied.

### BACKGROUND

In her Complaint, plaintiff alleges that shortly after beginning to work for Plaid Pantries in April 2000, Karimi–Beikabaki began soliciting her for dates. Compl. at ¶ 6. Although plaintiff rebuffed his sexual overtures and advances which she found unwelcome, he continued making inappropriate and offensive sexual advances and comments to plaintiff. *Id.* at ¶ 20. Karimi–Beikabaki intimated to plaintiff that her continued refusal of his offers for a date could affect her job security and working conditions, such as the amount of hours she worked. *Id.* at ¶ 22. On May 4, 2000, fearing that her job may be in jeopardy if she did not agree to his advances, plaintiff agreed to accompany Karimi–Beikabaki to dinner at a public restaurant in Portland. *Id.* at ¶ 32. Unknown to her, Karimi–Beikabaki asked two friends, defendants Scott Wang and Don Johnson, to join him. *Id.* at ¶¶ 32, 33. After dinner, they refused to take plaintiff home and instead took her to Wang's apartment, forced her to ingest a "date rape" drug, and then proceeded to take turns having

vaginal and oral sex with plaintiff. *Id.* at ¶¶ 35, 36. They drove her home about 4:00 a.m. *Id.* at ¶ 47.

The next day, Karimi–Beikabaki called plaintiff to see if she would be in to work. *Id.* at ¶ 48. She reported for work at 2:00 p.m. and informed one of her co-workers of Karimi–Beikabaki's conduct. *Id.* at ¶ 66. The co-worker told plaintiff to call the store manager and wait in the back room for him to arrive. *Id.* at ¶ 66. He arrived after dark, did not call the police, take a statement from plaintiff, question Karimi–Beikabaki, or take plaintiff to the hospital. *Id.* at ¶ 67. At about 11:00 p.m., a woman from Plaid Pantries's human resources department took plaintiff to the hospital where she was treated. *Id.* at ¶¶ 68, 69. She returned home about 4:00 a.m. on May 6, 2000. *Id.* at ¶ 70.

After taking two weeks off from work, plaintiff returned to work on May 19 or May 20, 2000. *Id.* at ¶ 78. On or about June 1, 2000, Tiki Gosser, the temporary assistant manager of the store, told plaintiff to come to work the next day at 9:00 a.m. instead of 8:00 a.m. *Id.* at ¶ 79. When the new manager Sheila Bruce arrived, she sent plaintiff home early, after having drastically cut plaintiff's hours. *Id.* at ¶ 81. Bruce told plaintiff to report to work at 9:00 a.m. the next day. *Id.* When plaintiff did so, Bruce yelled at her for being late. *Id.* at ¶ 82. Shortly thereafter, Plaid Pantries terminated plaintiff. *Id.* at ¶ 83.

Based on these allegations, plaintiff brings the following claims for relief: (1) sex harassment based on hostile environment against Plaid Pantries under Oregon Revised Statute § (O.R.S.) 659.030 and Title VII (Claims One and Two); (2) sex harassment based on a quid pro quo theory against Plaid Pantries under O.R.S. 659.030 and Title VII (Claims Three and

Four); (3) sexual battery against the individual defendants (Claim Five); (4) sexual assault against the individual defendants (Claim Six); (5) intentional infliction of emotional distress against the individual defendants (Claim Seven); (6) negligent infliction of emotional distress against the individual defendants (Claim Eight); (7) respondeat superior for torts of sexual battery and sexual assault against Plaid Pantries (Claim Nine); (8) intentional infliction of emotional distress against Plaid Pantries (Claim Ten); (9) negligent infliction of emotional distress against Plaid Pantries (Claim Eleven); (10) retaliation under O.R.S. 659.030 against Plaid Pantries (Claim Twelve); (11) retaliation under Title VII against Plaid Pantries (Claim Thirteen); and (12) common law wrongful discharge against Plaid Pantries (Claim Fourteen).[1]

The Complaint was filed in state court on February 16, 2001. Plaid Pantries removed it here on March 13, 2001. On April 4, 2001, plaintiff moved for an order of default and for default judgment against Karimi–Beikabaki. Plaintiff moved to remand the action on April 11, 2001. On that same date, I granted the motion for order of default. Later, on April 18, 2001, plaintiff withdrew her motion for default judgment. On April 19, 2001, Karimi–Beikabaki filed an unopposed motion to set aside the order of default. On April 25, 2001, I granted the unopposed motion to set aside the order of default. On May 1, 2001, Karimi–Beikabaki filed an Answer to the Complaint and on May 14, 2001, he filed a joinder in the notice of removal.

## DISCUSSION

Remand is governed by 28 U.S.C. § 1447(c) which provides, in pertinent part, that

---

1. Although it is unclear from the Complaint whether plaintiff's wrongful discharge claim is brought under Oregon or federal common law, plaintiff clarified at oral argument that the claim is an Oregon law claim.

[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

■ "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). The defendant also has the burden of showing that it has complied with the procedural requirements for removal. *Schwartz v. FHP Int'l Corp.*, 947 F.Supp. 1354, 1360 (D.Ariz. 1996).

Plaintiff moves to remand the case back to state court based on three alleged defects: (1) Plaid Pantries failed to join the proper parties in its removal; (2) Plaid Pantries failed to explain the co-defendants' failure to join in the notice of removal; (2) and (3) Plaid Pantries failed to state the grounds for the court's removal jurisdiction. Defendants contend that plaintiff has waived her right to challenge any procedural defects by seeking and obtaining the default order. I address the arguments in turn.

## I. Joinder of Fewer Than All Defendants

■ "Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, ex-

cept for nominal, unknown or fraudulently joined parties." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988). Other exceptions to this general rule are for doe defendants and unserved defendants. *See Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir.1984) (unserved defendants need not be joined); 28 U.S.C. § 1441(a) (defendants sued under fictitious names disregarded).

■ Plaintiff acknowledges that the failure of Wang and Johnson to join in the removal is not a defect because they have not been served. She asserts, however that Karimi–Beikabaki was served before removal and none of the exceptions to joinder apply to him.[2] Thus, she argues, because Karimi–Beikabaki did not join in the removal petition, it is invalid.

Plaid Pantries argues that Karimi–Beikabaki was not required to join in the removal because Plaid Pantries has federal claims brought against it which are separate and independent of other non-removable claims against the other defendants. For the reasons explained below, I agree with Plaid Pantries at least as to the retaliation claim.

■ The federal removal statutes provide that

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

---

**2.** Plaintiff's assertion that Karimi–Beikabaki was served on February 22, 2001, is undisputed even though it is unsupported in the record on the motion to remand. Karimi–

Beikabaki represents in his memorandum in support of his unopposed motion to set aside the order of default, that he was personally served on that date.

28 U.S.C. § 1441(c). Claims are not separate and independent in the Ninth Circuit "'where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions[.]'" *Emrich*, 846 F.2d at 1197 (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

Given that section 1441(c) applies to separate and independent claims under 28 U.S.C. § 1331 which governs federal question jurisdiction, only the federal claims brought against Plaid Pantries are relevant to this issue. There are three federal question jurisdiction claims against Plaid Pantries: sexual harassment (hostile environment) under Title VII; sexual harassment (quid pro quo) under Title VII; and retaliation under Title VII. Plaintiff argues that the claims against Plaid Pantries are not separate and independent from the claims against the remaining defendants because the events giving rise to all of plaintiff's claims are part of "an interlocked series of transactions." Plaintiff states that she alleges damages resulting from sexual harassment, both minor and severe, at the hands of Karimi–Beikabaki which were exacerbated by Plaid Pantries's subsequent treatment of her. She alleges that Karimi–Beikabaki's initial harassment led to her sexual assault and battery which formed the underlying motive and reason for her termination, and the emotional distress she suffered resulted.

Plaid Pantries argues that the Title VII claims are separate and independent from the remaining state claims against it and the remaining defendants. Plaid Pantries notes that there is no individual liability under Title VII and therefore, these claims can be brought only against Plaid Pantries. Plaid Pantries also argues that plaintiff is not alleging a single wrong. Rather, Plaid Pantries contends, she alleges fourteen different wrongs against four different defendants. Plaid Pantries states that plaintiff's claims against it are not contingent on the claims against the other defendants.

Some Title VII, or similar federal employment discrimination claims, are not separate and independent from state law claims based on the same sequence of events. *See, e.g., Doll v. U.S. West Communications, Inc.*, 85 F.Supp.2d 1038, 1041 (D.Col.2000) (federal question claims of race discrimination under Title VII along with claims under the Americans with Disabilities Act and the Family Medical Leave Act were not separate and independent from breach of contract, wrongful discharge, intentional infliction of emotional distress claims; state law claims, "although grounded on different theories of liability," arose out of an "interlocking series of transactions" related to plaintiff's termination and thus, derived from substantially the same facts); *Thompson v. Mobile Communications*, 1999 WL 232018, at *5 (D.N.J. Apr. 19, 1999) (state and federal statutory employment discrimination claims are not separate and independent because they arose from an interrelated series of events or transactions when all the claims stemmed from facts surrounding the termination of plaintiff's employment) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 786 (3d Cir. 1995)); *Danfelt v. Board of County Comm'rs of Washington County*, 998 F.Supp. 606, 610 (D.Md.1998) (claims alleging breach of contract and violations of the Americans with Disabilities Act and the Family Medical Leave Act were not separate and independent because all stemmed from a single wrong resulting from the same transaction—the termination of plaintiff's job); *Landry v. Delta Well Surveyors*, 1997 WL 399594, at *2 (E.D.La. July 15, 1997) (claims of employment discrimination based on sex, sexual harassment, wrongful termination, and intentional infliction of emotional distress were not separate and independent for purposes of

section 1441(c)); *Williams v. Huron Valley Sch. Dist.*, 858 F.Supp. 97, 98 (E.D.Mich.1994) (a religious discrimination claim under Title VII, a companion claim under state law, and an intentional infliction of emotional distress claim were not separate and independent claims because they all arose directly, or indirectly, from the rejection of plaintiff's employment application); *see also Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir.1996) (noting that if a claim involves substantially the same facts, it is not independent and if one claim depends on establishing liability under the other, the two cannot be independent; concluding that a claim under the Family Medical Leave Act was not separate and independent from an intentional infliction of emotional distress claim, but that it was separate and independent from a claim alleging intentional interference with contractual relations).

Defendants rely on *Newton v. Coca-Cola Bottling Company Consolidated*, 958 F.Supp. 248 (W.D.N.C.1997). There, the plaintiff brought a claim of intentional infliction of emotional distress against both her supervisor and her employer, claims of quid pro quo and hostile environment sexual harassment and unlawful retaliation against her employer, and a claim under the Violence Against Women Act (VAWA), as well as an assault claim, against her supervisor alone.

Although it appears in *Newton* that there were three Title VII claims asserted against the employer, the court phrased its "separate and independent" discussion in the singular by referring to one Title VII claim. *Id.* at 251. The court considered whether the Title VII claim was separate and independent from the VAWA claim. The court concluded that the claims involved two separate wrongs, "one wrong being the corporate defendants' alleged act of retaliating against the plaintiff by ending her employment and the other wrong being defendant Patton's alleged act of committing criminal violence against her." *Id.* at 251. The court further commented that

> [t]hese claims involve distinct acts by different defendants. Moreover, the independent nature of these alleged wrongs is further highlighted by the fact that neither claim is contingent upon the other. It is entirely possible for the plaintiff to establish that Patton committed gender-based violent acts against her in violation of the VAWA, yet still lose her retaliation claim against Coca-Cola. By the same analysis, the trier of fact could conclude that Patton never assaulted the plaintiff as she claims, yet still find that Coca-Cola retaliated against her for complaining about the Title VII issue. The proof, defenses, and even the parties in each claim are completely different.

*Id.* at 251.

In the instant case, I conclude that the retaliation claim asserted here, like the retaliation claim in *Newton*, is a separate and independent federal claim. The other Title VII claims may not be separate and independent because they involve substantially the same facts as the other claims and arise from an "interlocked series of transactions." To succeed against Plaid Pantries on the quid pro quo claim, plaintiff must establish that the alleged actions by Karimi–Beikabaki occurred.

The retaliation claim stands apart and does not require plaintiff to establish Karimi–Beikabaki's actions as alleged. Following the reasoning of *Newton*, the retaliation claim is not contingent on the other claims. It involves facts occurring after the initial harassment and assault by Karimi–Beikabaki and the other two defendants. The facts which form the basis of the retaliation claim are different in kind and different in time. Accordingly, the

retaliation claim is "separate and independent" under section 1441(c). As such, Plaid Pantries was not required to join Karimi–Beikabaki in its removal of the case from state to federal court.

## II. Failing to Explain Absence of Joinder by Co–Defendants

■ The removing party must affirmatively explain the absence of any co-defendants in the notice of removal. *Prize Frize*, 167 F.3d at 1265 ("Where fewer than all the defendants have joined in a removal action, the removing party has the burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal."). In *Prize Frize*, the removing parties stated in their notice of removal that they had "been informed and believe[d] that *many* of the other defendants named in the fourth amended complaint caption have not been properly served in this matter." *Id.* at 1266. The court held that the defendants' explanation failed to meet their burden to affirmatively explain the other defendants' absence from the removal notice because the "notice was facially deficient for failing to explain why *all* non-joining defendants have not consented [to removal]." *Id.*

Other courts have reached similar conclusions. *See Scheall v. Ingram*, 930 F.Supp. 1448, 1449 (D.Colo.1996) (court remanded the case because the removal petition failed to explain the absence of the co-defendants' consent); *Castle v. Laurel Creek Co.*, 848 F.Supp. 62, 66 (S.D.W.Va. 1994) (removing party failed to include the allegation of fraudulent joinder to defeat complete diversity in its notice of removal; case was remanded on grounds that the failure to include this allegation in the notice of removal was a substantial and material defect compelling a remand); *Anne Arundel County v. United Pac. Ins. Co.*, 905 F.Supp. 277, 278–79 (D.Md.1995) (moving defendant's failure to explain why a co-defendant had not joined the notice of

removal required a remand; court reasoned the notice's statement "upon information and belief" that the other defendant consented was insufficient); *Bellone v. Roxbury Homes, Inc.*, 748 F.Supp. 434, 437 n. 1 (W.D.Va.1990) (the court refused an attempt to amend a notice of removal failing to indicate the consent of a co-defendant or explain its absence, reasoning the amendment was not the type of "minor" amendment contemplated by the removal statute).

■ Plaintiff correctly notes that in its notice of removal, Plaid Pantries did not address the absence of any of the other defendants from the notice. While neither Johnson nor Wang were required to join because they had not been served, Plaid Pantries was required to state the reasons for their absence in its notice. Additionally, even though Karimi–Beikabaki was not required to join in the removal given the separate and independent Title VII retaliation claim asserted against him, Plaid Pantries also failed to affirmatively state the reasons for his absence. Plaintiff argues that Plaid Pantries's failure in this regard is a defect requiring remand to state court.

Plaid Pantries contends that plaintiff's argument is a form over function argument and not applicable here where a defendant has independent and separate federal claims against it. Plaid Pantries argues that *Prize Frize* does not apply here because *Prize Frize* was not a section 1447(c) case which addressed the situation where federal claims are asserted against some defendants, but not others. In *Prize Frize*, the federal claims were asserted against all defendants. Plaid Pantries argues that here, where it has a separate and independent federal claim asserted against it, it does not need consent of those defendants who do not have federal claims to remove, and thus, it does

not need to explain the absence of non-joining defendants.

I reject Plaid Pantries's argument. *Prize Frize* indicates that the requirement for the affirmative explanation of the absence of co-defendants in the notice of removal is based on section 1446(a), governing procedures for removal generally. The case cited by *Prize Frize* explains that

> [b]ecause it is incumbent upon a party petitioning to remove a state court case to federal court to allege in the petition 'a short and plain statement of the facts which entitle' him to remove, 28 U.S.C. § 1446(a), a petition filed by less than all of the named defendants is considered defective if it fails to contain an explanation for the absence of co-defendants.

*Northern Ill. Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 273 (7th Cir.1982). The requirement then, is based on what the removing party must allege in the petition under section 1446(a) and does not depend on the basis of the removal or who must join in the removal.

The requirement applies to *all* co-defendants, even those who are exempted from joinder because they were not served or were fraudulently joined. The fact that Plaid Pantries has a separate and independent claim asserted against is clearly relevant to whether it needs to join other co-defendants in the removal, but it is not relevant to its obligation to explain the co-defendants' absence. Therefore, although the Title VII retaliation claim is a separate and independent claim allowing Plaid Pantries to remove without joining Karimi-Beikabaki, Plaid Pantries's removal is defective for failing to affirmatively explain the absence of all co-defendants.

### III. Failure to State Grounds For Removal

██ Next, plaintiff argues that remand is warranted because Plaid Pantries fails to state the basis for removal jurisdiction in its notice of removal. In pertinent part, section 1446(a) states that a notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This means that a defendant seeking removal from state to federal court "must state the basis for removal jurisdiction in the petition for removal." *O'Halloran v. University of Wa.,* 856 F.2d 1375, 1381 (9th Cir.1988).

██ Here, Plaid Pantries's notice of removal states that "[t]his court has federal question jurisdiction over this civil action pursuant to 42 U.S.C. § 2000e–5(f)(3); Title VII of the Civil Rights Act." Def't's Notice of Removal at ¶ 6. Plaintiff argues that this is a defective assertion of removal jurisdiction because, while it explains how the court obtains original jurisdiction (federal question), the notice does not specifically state the grounds for removal jurisdiction. Plaintiff contends that the notice is additionally defective because it does not explain how the federal court can exercise jurisdiction over the non-federal question claims (either under 28 U.S.C. § 1367 as supplemental state law claims or under 28 U.S.C. § 1441(c) as claims joined to a separate and independent claim), which comprise a majority of the claims in the Complaint.

Plaid Pantries argues that its notice of removal clearly states that this court has federal question subject matter jurisdiction pursuant to Title VII and that from this statement, it is clear that federal question jurisdiction is the basis for its removal. I agree. What remains unanswered, however, is whether an adequate statement of removal jurisdiction covering the federal claims is sufficient in the presence of state claims. In other words, when federal question jurisdiction is the basis for removal jurisdiction, must the removing party independently assert the basis for removing the state claims as well? A related

question is whether the state claims are considered supplemental state claims under section 1367 or as claims joined to the separate and independent claim under section 1441(c).

Plaintiff relies on a recent Ninth Circuit case to argue that Plaid Pantries's jurisdictional allegations are defective. In *ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of Montana*, 213 F.3d 1108 (9th Cir.2000), the defendant removed the case from state court alleging that although the plaintiff had not pleaded any federal claims, under the "artful pleading rule," the plaintiff's claims were really claims under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and thus, the complaint was removable based on federal question jurisdiction. *Id.* at 1114–16. In its notice of removal, the defendant stated the basis for removal jurisdiction as 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b) (federal question jurisdiction and CERCLA). *Id.* at 1117. The court determined that no federal claims were presented in the complaint. *Id.* at 1113–16. The defendant made additional arguments for jurisdiction: that the district court had the power to enforce a previous order in an earlier case between the parties under its power to exercise supplemental jurisdiction under 28 U.S.C. § 1367 and the All Writs Act under 28 U.S.C. § 1651. *Id.* at 1116–17.

But, the notice of removal did not state that removal jurisdiction existed under either the supplemental jurisdiction statute or the All Writs Act. *Id.* Thus, the court held that the basis of removal was not explained. *Id.* at 1117. Additionally, although there was precedent to allow an amendment to a notice of removal after the thirty-day window has closed to correct a "defective allegation of jurisdiction," *id.* (citing 28 U.S.C. § 1653), the defendant was not allowed to amend its notice to state alternative bases for removal jurisdiction because the court determined that the necessary amendment was more than a correction of a "defective allegation of jurisdiction" permissible under section 1653. *Id.*

*ARCO*, however, is not on point. There, based on the court's ruling, the *only* basis for removal jurisdiction asserted in the removal notice was erroneous, and there were no alternative bases in the notice. Here, the notice of removal adequately states removal jurisdiction for the Title VII claims. The only question is whether it is a complete statement of removal jurisdiction given the presence of the state claims.

Neither party supplied any cases addressing this issue. There are, however, a few cases which are helpful. In *Booty v. Shoney's, Inc.*, 872 F.Supp. 1524 (E.D.La. 1995), a wife brought suit in state court against a restaurant arising out of a slip and fall. Her husband brought a derivative loss of consortium claim. The defendant removed the action on the basis of diversity of citizenship. It did not cite the supplemental jurisdiction statute as a basis for jurisdiction over the husband's claim. *Id.* at 1529.

The court stated that the defendant's "failure to allege that the court has supplemental jurisdiction over [the husband's] claim is not fatal and can be cured through amendment." *Id.* Although not expressly stated, the court impliedly concluded that the failure to expressly allege supplemental jurisdiction over the supplemental claim along with alleging the basis for removal jurisdiction of the wife's claim, was a defect in the removal notice. Nonetheless, the court held that because supplemental jurisdiction over a derivative claim such as loss of consortium was not replacing the only alleged basis for jurisdiction which was defective, the defendant could

amend its notice of removal to add section 1367 as a jurisdictional basis for the loss of consortium claim. *Id.*

*Booty* is instructive if the state claims are supplemental claims under section 1367. Because of the nature of the non-retaliation Title VII claims, which are not separate and independent claims under section 1441(c), the state claims could be considered as supplemental state claims under section 1367. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 354, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[supplemental] claims are not 'separate and independent' within the meaning of the removal statute."). If so, *Booty* instructs that failure to separately allege section 1367 as a basis for removal jurisdiction over those claims, can be a defect in the removal notice.

Nonetheless, *Booty* allows the defect to be amended, even outside the thirty-day removal window. As explained in *Booty,* supplemental jurisdiction over a derivative state claim is not a new basis for removal jurisdiction and thus, under 28 U.S.C. § 1653, an amendment was permissible. This conclusion comports with Ninth Circuit law as stated in *ARCO.* There, the Ninth Circuit explained that a notice of removal may be amended after the thirty-day window to correct "a defective allegation of jurisdiction." *ARCO,* 213 F.3d at 1116 (citing 28 U.S.C. § 1653, 16 *Moore's Federal Practice* § 107.30[2][a][iv] ("[A]mendment may be permitted after the 30–day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction.")).

 A party may not rely on supplemental jurisdiction as an independent ba-

sis for removal. *E.g., Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 456 (6th Cir.1996) (section 1367 is not a source of original subject matter jurisdiction and a removal petition may not base jurisdiction on the supplemental jurisdiction statute). Given that premise, asserting supplemental jurisdiction as the basis of removal for the state claims in this case is not adding a new basis for jurisdiction, but is a correction of an incomplete or defective assertion of removal jurisdiction. When the basis for original jurisdiction is sufficient and the only flaw is the failure to articulate the basis for removal jurisdiction over the supplemental claims, amendment may be made after the thirty-day removal window.

Alternatively, given the presence of the Title VII retaliation claim, the states claims could be considered claims joined to that separate and independent claim under section 1441(c). If so, an adequate statement of the basis for removal jurisdiction of the separate and independent federal claim is sufficient as a basis of removal over all "otherwise non-removable claims" because section 1447(c) provides for removal of the "entire case" based on the presence of the separate and independent federal claim.

## IV. Waiver

 Plaid Pantries argues that plaintiff has waived her right to challenge any procedural defects in the notice of removal. The procedural defect at issue is Plaid Pantries's failure to explain the absence of the co-defendants from the notice of removal.[3] For the reasons explained below, I agree with Plaid Pantries.

---

**3.** Although, as noted in the immediately preceding section, to the extent the state claims are construed as supplemental claims under section 1367, Plaid Pantries's failure to expressly assert the removal jurisdiction over those claims is also a defect, it is substantive not procedural. Because amendment of that defect may still occur, however, it does not require remand.

In *Koehnen v. Herald Fire Insurance Company*, 89 F.3d 525 (8th Cir.1996), the defendant removed the case to federal court after the expiration of the thirty-day removal requirement under 28 U.S.C. § 1446(b). The plaintiff filed a motion to remand the action to state court based on the untimely removal. But, before moving to remand, the plaintiff had filed a motion to file a supplemental complaint and had participated in oral argument on that motion. The court noted that the district court did not abuse its discretion in concluding that the right to seek remand had been waived by the plaintiff's filing and arguing the supplemental complaint motion, especially when the plaintiff did not seek to withdraw or stay the motion until after the remand motion could be decided. *Id.* at 528.

■■■ As in the Eighth Circuit, the law in the Ninth Circuit is that procedural defects in the removal of an action do not affect the court's subject matter jurisdiction and therefore may be waived. *O'Halloran*, 856 F.2d at 1379. A party that "engages in affirmative activity in federal court typically waives the right to seek a remand[.]" *Koehnen*, 89 F.3d at 528; *see also In re Moore*, 209 U.S. 490, 496, 28 S.Ct. 585, 52 L.Ed. 904 (1908) (if a non-removing party has taken action in federal court, such as amending the complaint, that party has essentially acquiesced in the federal court's jurisdiction), *overruled in part on other grounds, Ex Parte Harding*, 219 U.S. 363, 31 S.Ct. 324, 55 L.Ed. 252 (1911); *Johnson v. Odeco Oil & Gas Co.*, 864 F.2d 40, 42 (5th Cir.1989) (non-removing party's participation in discovery and filing of amended complaint constitutes a waiver of the right to seek remand).

Plaid Pantries relies on *Koehnen* to argue that plaintiff's motion for order of default and motion for default judgment establish plaintiff's acquiescence in this court's jurisdiction, constituting a waiver of plaintiff's right to seek a remand based on procedural defects. This court has previously reached a similar conclusion on facts akin to those presented here. In *Giraudo v. Henkels & McCoy*, 1993 WL 302354 (D.Or.1993), one defendant removed the case to federal court and the other did not join in the notice of removal. After the case was removed, the plaintiffs moved for an order of default against the non-joining defendant. *Id.* at *1. The court granted the motion a few days later. *Id.* On the same day that the order of default was granted, the plaintiffs filed a motion to remand the action to state court. *Id.*

Judge Frye held that the plaintiffs had "availed themselves of the jurisdiction of the federal court when they sought an order of default against [the non-joining defendant]." *Id.* at *2. She concluded that by seeking an order of default against that defendant, the plaintiffs had "waived their right to object to the procedural irregularity caused by [the removing defendant's] failure to join [the non-removing defendant] in the petition for removal." *Id.*

Plaintiff argues that *Koehnen* and *Giraudo* are distinguishable. First, plaintiff contends that the motion to amend the complaint, filed by the plaintiff in *Koehnen* before the motion to remand, is a "substantive motion directly addressing the merits of the case." Pltf's Supp'l Mem. at p. 2. In contrast, plaintiff argues, a default against a non-appearing defendant is not substantive and does not involve the merits of the case. Plaintiff suggests that a default cannot become substantive until a hearing under Federal Rule of Civil Procedure 55(b)(2).

Second, plaintiff notes that in *Koehnen*, the plaintiff "'vigorously briefed and argued his substantive motion.'" *Id.* (quoting *Koehnen*, 89 F.3d at 528). Here, plaintiff withdrew her motion for default

**1272**

judgment soon after filing her motion to remand.

Third, plaintiff contends that the plaintiff in *Koehnen* did not "push" the remand issue or "otherwise address" the issue until after the federal court had made an unfavorable ruling on the plaintiff's motion to amend the complaint. Here, plaintiff notes, her motion to remand was not prompted by an unfavorable court ruling.

■ The distinctions raised by plaintiff between the instant case and *Koehnen* do not change the result here. The affirmative conduct constituting a waiver of the right to seek a remand does not depend on whether the motion filed in federal court is "substantive" or "vigorously litigated." Additionally, an order of default, whether "substantive or not," carries great significance. For example, once the default order is entered, the defaulted party can no longer contest liability. *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977) ("upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also Conetta v. National Hair Care Centers, Inc.,* 236 F.3d 67, 75–76 (1st Cir.2001) (the prevailing view is that an entry of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability). Thus, seeking and obtaining an order of default from a federal court is not an insignificant, ministerial act.

In connection with the order of default, plaintiff filed a two-page motion, a two-page memorandum, a two-page declaration of counsel, and a copy of the certificate of service on Karimi–Beikabaki. While not extensive, the materials demonstrate that plaintiff expected the court to seriously consider her motion and award her a favorable result. Some may describe this as a "vigorous" effort. At a minimum, it is a "sufficient" effort to produce the same result as a partial motion for summary judgment on liability.

Furthermore, an unfavorable result on a motion filed before a motion to remand need not prompt the motion to remand for waiver to occur.

■ Plaintiff next argues that because she did not take affirmative steps to obtain a default judgment against Karimi–Beikabaki, but obtained only an order of default, she did not affirmatively submit to the authority of the federal court to determine the amount of damages and the truth of plaintiff's allegations. Plaintiff is in error. First, as noted above, a default order alone conclusively establishes the well-pleaded non-damages allegations of the complaint. Second, a motion for order of default alone demonstrates availment of the federal court's jurisdiction. *See Giraudo.*

Finally, plaintiff argues that *Giraudo* "does not provide much authority" because it is an unpublished opinion with no reasoning. I disagree. Because many decisions of this Court are unpublished, the fact that a decision is unpublished does not detract from its precedential authority. Additionally, while Judge Frye did not cite any other cases in support of her conclusion, it is an overstatement to argue that *Giraudo* contains no reasoning. The facts and circumstances of *Giraudo* are similar to those in the instant case and the reasoning comports with relevant circuit court authority.

Plaintiff's arguments in opposition to waiver are without merit. Therefore, I find that plaintiff has waived her right to seek remand based on the procedural defect created by Plaid Pantries's failure to affirmatively explain the absence of the codefendants in its notice of removal.

## V. Attorney's Fees

Because I recommend denying the motion to remand, an award of attorney's fees under section 1447(c) is inappropriate.

## CONCLUSION

I recommend that plaintiff's motion to remand (# 10) be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 9, 2001. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due August 23, 2001, and the review of the Findings and Recommendation will go under advisement on that date.