# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1927

_____

| | | |
|---|---|---|
| Geraldine Lang, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 11, 2010
Filed: July 15, 2010

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

In this appeal, we are asked to decide whether a garnishment action brought by Geraldine Lang in Minnesota state court against the Social Security Administration (SSA) was removed to federal court in a timely manner. The district court held the government complied with the thirty-day time limit for removal set forth in 28 U.S.C. § 1446(b). We disagree, and therefore reverse and remand with instructions to the district court to remand this case to state court.

I

On December 26, 2007, Lang obtained a Minnesota state court judgment for unpaid child support against her ex-husband, Thomas Swanson. The judgment amounted to $9,436. At the time, Swanson was receiving Social Security disability benefits from the SSA. Five days later, on December 31, 2007, Lang served a garnishment summons on the SSA seeking to have her state court judgment satisfied out of Swanson's social security payments.[1] Lang pursued the garnishment action in accordance with 42 U.S.C. § 659, under which the United States has agreed to be sued in state court garnishment proceedings brought to enforce child support obligations.

The garnishment summons complied with state law in all respects. Lang served the garnishment summons upon Anne Lewandoski at the SSA's field office in St. Paul, Minnesota. Prior to doing so, Lang's counsel contacted the SSA to determine who the SSA had designated as its "agent . . . to receive orders and accept service of process in matters relating to child support or alimony," 42 U.S.C. § 659(c)(1)(A), and was specifically instructed to serve the garnishment summons on Lewandoski.

Minnesota law requires a person served with a garnishment summons to respond to the summons by sending the creditor "a written disclosure of the garnishee's indebtedness, money, or other property owing to the debtor" within twenty days. Minn. Stat. § 571.75, subd.1. The SSA did not comply with the garnishment summons. Instead, the SSA contacted Lang's counsel requesting a copy of the state court order of judgment for child support arrearages. Lang provided the SSA with a copy of the state court order on February 18, 2008. The SSA still did not comply with

---

[1]The garnishment summons listed the amount due and owing as $9,456.88. The parties do not explain the discrepancy between the state court judgment and the amount sought to be garnished. We presume the slight increase is due to accrued interest. See Minn. Stat. § 548.091, subd. 1a (providing for accrued interest on child support judgments).

the garnishment summons by sending Lang a written disclosure. Instead, on February 25, 2008, the SSA sent Lang's counsel a letter claiming it could not comply with the garnishment summons because the state court order "does not show that it is to collect child support and/or alimony." The state court judgment expressly indicated the judgment was for child support. The SSA's letter also claimed it did not have "enough information (full name and social security number) for us to identify the person whose benefit payments it will affect." The garnishment summons specifically listed "Thomas M. Swanson" as the debtor and included his social security number.

On March 4, 2008, after the SSA had still failed to comply with the garnishment summons by providing Lang with a written disclosure in accordance with state law, Lang served the SSA with a notice of motion and motion indicating she would be asking the state court for a default judgment pursuant to Minn. Stat. § 571.82, subd. 1,[2] or, in the alternative, for leave to file a supplemental complaint against the SSA pursuant to Minn. Stat. § 571.75, subd. 4.[3] A motion hearing was set for March 25,

---

[2]Minn. Stat. § 571.82, subd.1 provides that "[i]f a garnishee fails to serve a disclosure as required . . . the court may render judgment against the garnishee . . . for an amount not exceeding 110 percent of the amount claimed in the garnishment summons." In this case, the amount claimed in the garnishment summons was $9,456.88.

[3]Minn. Stat. § 571.75, subd.4 provides in relevant part as follows:

[W]here the garnishee denies liability, the creditor may move the court . . . for an order making the garnishee a party to the civil action and granting the creditor leave to file a supplemental complaint against the garnishee and the debtor. The supplemental complaint shall set forth the facts upon which the creditor claims to charge the garnishee. . . . The supplemental complaint shall be served upon the garnishee and the debtor and any other parties. The parties served shall answer or respond pursuant to the Minnesota Rules of Civil Procedure for the District Courts, and if they fail to do so, judgment by default may be rendered against them pursuant to section 571.82.

2008. The SSA did not serve or file a response to the motion, and did not appear at the hearing.

On April 8, 2008, the state court authorized Lang to serve and file a supplemental complaint. Lang properly served and filed the supplemental complaint on April 10, 2008. The SSA did not file or serve an answer to the supplemental complaint.

On May 16, 2008, Lang properly served the SSA with a notice of motion and motion indicating she would be asking the state court for summary judgment. A motion hearing was set for June 5, 2008. Once again, the SSA did not respond to the motion or appear at the motion hearing to oppose summary judgment. As might be expected, on June 5, 2008, the state court entered judgment against the SSA in favor of Lang in the amount of $9,456.88, the amount requested in the initial garnishment summons. On June 30, 2008, after the default judgment had been entered, the SSA sent Lang's counsel a note stating "WE ARE UNABLE TO PROCESS YOUR REQUEST."

Having properly complied with state garnishment law every step of the way, and now armed with a judgment against the SSA, Lang initiated post-judgment efforts to recoup her child support arrearages. On July 15, 2008, the state court issued a Writ of Execution directed to the Ramsey County (MN) Sheriff. On August 12, 2008, the Ramsey County Sheriff served a written demand on the SSA at its field office in St. Paul, Minnesota. On August 18, 2008, Lang served a notice of motion on the SSA indicating she was seeking an order authorizing the Ramsey County Sheriff to execute the writ of execution and to seize sufficient personal property at the SSA's field office to satisfy the judgment.

On August 26, 2008 – now 241 days after service of the initial garnishment summons; 140 days after the service of the supplemental complaint; and 84 days after

judgment had been entered against the SSA – the government filed a notice of removal in federal district court seeking to remove Lang's garnishment action from state court to federal court. In the notice of removal, the government claimed § 1446(b)'s[4] thirty-day "period for removal has not expired" on the grounds the supplemental complaint "was commenced with insufficient service of process" because it did not comply with Rule 4 of the Federal Rules of Civil Procedure.

Lang timely moved the district court to remand the garnishment action to state court. Lang argued the garnishment summons should be considered the "initial pleading" for purposes of starting § 1446(b)'s thirty-day time limit, rendering the removal untimely. Alternatively, Lang argued even if the supplemental complaint was the "initial pleading" for purposes of § 1446(b)'s thirty-day period, the removal was still untimely because the supplemental complaint had been served 140 days before the government removed the case to federal court.

---

[4]Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446(b).

In response, the government argued the supplemental complaint was the "initial pleading." The government further argued the notice of removal was timely because the supplemental complaint had not been properly served. See Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999) (indicating formal service is required for § 1446(b)'s thirty-day period to begin to run). The government's argument was based on its claim that service of the supplemental complaint was insufficient because it did not comply with Rule 4 of the Federal Rules of Civil Procedure. More specifically, the government argued Lang was required to, and did not "deliver a copy of the summons and the complaint to the United States attorney for the district where the action is brought." Fed. R. Civ. P. 4(i)(1)(A)(i).[5]

The district court agreed with the government that the supplemental complaint, rather than the initial garnishment summons, was the "initial pleading" for purposes of § 1446(b)'s thirty-day period for removing an action. The district court further agreed with the government's contention that the thirty-day period had not yet run because service of Lang's supplemental complaint did not comply with Rule 4 of the Federal Rules of Civil Procedure. The district court then denied Lang's motion to remand the case to state court. In addition, for reasons we need not discuss for purposes of resolving the timeliness issue, the district court thereafter exercised jurisdiction over the action and granted the government's motion to dismiss. Lang filed a timely appeal contending, *inter alia*, the district court erred when it concluded the government's removal was timely.

---

[5]The "districts" referred to in Rule 4(i)(1)(A)(i) of the Federal Rules of Civil Procedure are the ninety-four districts in the federal court system. The garnishment action was not brought in one of the district courts within the federal court system. The state court garnishment action was brought in the First Judicial District for the state of Minnesota, comprised of seven Minnesota counties (Carver, Dakota, Goodhue, LeSueur, McLeod, Scott, and Sibley).

## II

We review de novo a district court's denial of a motion to remand a case to state court.  Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006).

On appeal, Lang contends the district court erred when it determined the supplemental complaint (served 140 days prior to the government's notice of removal) was the initial pleading for purposes of § 1446(b), rather than the garnishment summons (served 241 days prior to removal).  We have not previously decided whether, for purposes of a Minnesota state garnishment action, the garnishment summons or the supplemental complaint triggers § 1446(b)'s thirty-day time period for removal.  The same question was raised in Koehnen v. Herald Fire Insurance Co., 89 F.3d 525 (8th Cir. 1996), but the manner in which Koehnen was resolved made it unnecessary to decide the question.  See id. at 529 n.5.[6]

It is again unnecessary for us to decide which event triggers the thirty-day period, because the government's removal was untimely whether the clock started to run when the initial garnishment summons was served or when the supplemental complaint was served.  The government's argument turns entirely on the premise that service of the supplemental complaint was insufficient to start the thirty-day time period because Lang did not comply with Rule 4 of the Federal Rules of Civil Procedure.

There is no support for the remarkable and unprecedented claim that service of certain selective filings in a state court garnishment action must comport with the

---

[6]In Reiko v. Creative Promotions, Inc., 70 F. Supp. 2d 998 (D. Minn. 1999), a district court concluded the trigger for the thirty-day removal period was the date the garnishment creditor served the motion for leave to file a supplemental complaint. Id. at 1001.

Federal Rules of Civil Procedure. State rules of procedure clearly governed Lang's state court garnishment action, including the service of the supplemental complaint, a part of the state garnishment process. See, e.g., Winkels v. George A. Hormel & Co., 874 F.2d 567, 568 (8th Cir. 1989) ("[S]tate procedural rules govern cases originating in state court until removed to federal court."); see also Minn. Stat. § 571.82, subd. 4 ("The supplemental complaint shall be served upon the garnishee and the debtor and any other parties. The parties served shall answer or respond pursuant to the Minnesota Rules of Civil Procedure for the District Courts, and if they fail to do so, judgment by default may be rendered against them pursuant to section 571.82.").

The district court interpreted 42 U.S.C. § 659(a) in such a way as to conclude the filing of the supplemental complaint changed the "nature" of the state court garnishment action into something other than a state court garnishment action, giving "rise to a new, direct claim against the SSA." Even assuming that is true, it does follow that the supplemental complaint triggered application of the Federal Rules of Civil Procedure. A supplemental complaint is an integral part of Minnesota's garnishment process, which a creditor may resort to whenever a garnishee fails to provide a written disclosure in response to the garnishment summons (as was the case here) or where the garnishee denies it owes money to the debtor. Service of filings in a state court garnishment are subject to state procedural rules before a creditor serves a supplemental complaint, remain subject to state procedural rules when a creditor serves a supplemental complaint, and remain subject to state procedural rules after a creditor serves a supplemental complaint (unless and until the action is removed to federal court). More to the point, to whatever extent the supplemental complaint may have changed the government's status in the state court garnishment action, the supplemental complaint did not, and could not, convert the state court proceeding itself into a federal court proceeding which would trigger application of the Federal Rules of Civil Procedure.

In addition to advocating an unprecedented application of the Federal Rules of Civil Procedure to state court proceedings, the government's argument runs directly contrary to the very purpose of § 659, which is to have the government treated the same way a private person would be treated with respect to legal process served in a state court garnishment action brought to satisfy a child support obligation. Section 659 is "designed to facilitate garnishment of federal funds where the intended recipient has failed to satisfy a legal obligation of child support." Rose v. Rose, 481 U.S. 619, 634 (1987). "The provision was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies." Id. at 635.

In order to facilitate the goal of the statute, the United States is treated the same as a private person would be treated for purposes of "legal process brought . . . by an individual obligee, to enforce the legal obligation of the individual [i.e., a person entitled to moneys due from or payable by the United States] to provide child support or alimony." 42 U.S.C. § 659(a). In other words, whether government money due or payable to someone who owes child support will be subject to legal process must be "determined in accordance with State law in like manner as if the United States were a private person." United States v. Morton, 467 U.S. 822, 831 n.13 (1984) (citations omitted). "Congress intended the Government to receive the same treatment as a private employer with respect to garnishment orders." Id. at 831.

It is axiomatic that state rules of civil procedure apply to state court actions, and the federal rules of civil procedure do not. For that reason alone, Lang did not have to comply with Rule 4 of the Federal Rules of Civil Procedure when serving the SSA with a copy of a supplemental complaint in a state court garnishment action. The provisions of § 659, however, make it even clearer that Lang did not have to comply with the Federal Rules of Civil Procedure when serving her supplemental complaint on the SSA. The position advanced by the government thwarts the very purpose of

§ 659 by applying different and more stringent rules to the legal process involved in a state court garnishment action brought against the United States. Minnesota practitioners are not required to comply with both state and federal rules of procedure when pursuing a child support garnishment action against the United States in Minnesota state courts.

The government urges us to leave the district court's decision intact, claiming this appeal has been mooted by a subsequent order issued in state court authorizing the SSA to garnish 10% of Swanson's monthly disability benefits to satisfy Lang's child support arrearages.[7] We disagree. The "test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" Air Line Pilots Ass'n, Int'l v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990) (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). The relief Lang seeks is to have the untimely removed action remanded to state court. She also seeks reversal of the district court's dismissal of her action, which eviscerated the $9,456.88 judgment she obtained in state court. The relief sought here is different than the relief Lang obtained in state court and, if granted, would make a difference to her legal interests. The relief sought here – a remand to state court and a reinstatement of a state court judgment for a lump sum – does not match the relief obtained in state court, which is an order merely authorizing garnishment of 10% of Swanson's monthly disability benefits. The government has not presented any evidence that Lang's child support arrearages have now been fully paid, or even whether garnishment is now taking place. "Relief granted in another tribunal can moot a claim, but only where the relief granted is complete." Kennedy Bldg. Assocs. v. Viacom, Inc., 375 F.3d 731, 746 (8th Cir. 2004).

---

[7]The state court order was entered only after, and as a consequence of, the district court's erroneous decision to exercise jurisdiction over this matter and dismiss Lang's action. The state court noted the district court "held the garnishment invalid" in granting the SSA's motion to intervene in the state court action. See Appellee's Addendum at A-13.

In arguing this appeal is moot, the government contends Lang is not entitled to the $9,456.88 judgment she obtained in state court on the grounds 42 U.S.C. § 659 does not waive sovereign immunity for state court garnishment actions to the point that a judgment can be entered directly against the United States. That is an interesting issue, but one on which we express no opinion at this time. The government's argument goes to the merits of the case. Our mootness inquiry focuses on whether the relief Lang seeks here is different than the relief she obtained under the subsequent state court order, not which party may ultimately be correct about the propriety of the relief sought. The government did not provide the district court, or us, with any sound basis for reaching the merits. Whatever challenges the government may have to the validity of the judgment, this untimely removed action is clearly not the appropriate forum for addressing them. The only reason the government has given us for exercising jurisdiction is the unsupportable claim that the Federal Rules of Civil Procedure govern the service of filings in a state court garnishment action. Having been presented with no sound reason for exercising jurisdiction, we must remand this matter to state court without reaching the merits.

## III

We vacate the district court's order and judgment of dismissal, and remand this untimely-removed action to the district court with directions to remand the case to state court.

_____